He then proceeded at length to state divers reasons why the *Page 118 
judgment should be reversed, which are all taken notice of in the opinion of the Court, and need not be stated more particularly.
Gaston contended that the appellant had, by his failure to file the record, forfeited all right to open it again, and could not be heard against the judgment. He admitted that if the appellee opened the record to the Court the whole case was subject to the opinion of the Court, which must then give such judgment as the court below ought to have given. But he urged that the provision allowing the appellee to file the record was for his benefit and he was at liberty to waive at any time before he actually asked for an affirmance of the judgment. He was entitled to be the first mover, and if he did not choose to ask anything from the Court the appellant could not.
He likewise submitted arguments in support of the judgment below, if the Court should think proper to go into that matter.
From the record it now appeared to be an action for a libel, commenced in the Superior Court, and the declaration was as follows, viz:
"Superior Court of Law,
"September Term, 1819.
"Hertford County — ss.
"James Frazier complains of Boon Felton and his wife, Eliza Felton, in custody, etc., of a plea of trespass on the case, etc., for that whereas the said James now is a just, moral, temperate and well-behaved man and citizen of the State, and as such hath always conducted himself, and until the committing of the several grievances by the said Boon and his wife Eliza, as hereinafter mentioned, was always reputed and esteemed by all his neighbors and other good and worthy citizens to whom he was in any wise known, to be a person of good name, fame (235) and credit; and whereas also the said James hath not ever been guilty, nor until the committing of the several grievances by the said defendants, as hereinafter mentioned, been suspected to have been guilty of the offenses and intemperate misconduct hereinafter mentioned to have been charged upon and imputed to the said James, or of any other such misconduct and infamous manner of living, by means of which said premises he, the said James, before the committing of the said several grievances by the said defendants, had deservedly obtained the good opinion and credit of all his neighbors and other good and worthy citizens to whom he was known. Yet the said defendants, well knowing the premises and greatly envying the happy state and condition of the said James, and contriving and wickedly and maliciously intending and combining together to injure *Page 119 
the said James in his good name, fame and credit, and to bring him into public scandal, infamy, disgrace and contempt with and amongst all his neighbors, and other good and worthy citizens to whom he was known, and to cause it to be believed that he the said James was a common sot and habitual drunkard, and with intent to vex, harrass and bring him, the said James, into contempt and disgrace, as aforesaid, the said Eliza Felton, wife of the said Boon, on the 20th day of July, A.D. 1819, at Hertford aforesaid, falsely, wickedly and maliciously did compose and publish and cause and procure to be published of and concerning the said James a certain false, scandalous, malicious and defamatory libel, containing amongst other things the false, scandalous, malicious, defamatory and libelous matter following, of and concerning the said James, that is to say: `His father' (speaking of John H. Frazier, and meaning the said James)`has given so much way to the pleasures of Bacchus that the old man is atall times utterly unqualified for business' (meaning and intending to have it believed that he, the said James, was a common sot and habitual drunkard and thereby incapacitated for business)."
"And the said James further saith that the said Boon and his wife Eliza, further contriving and intending as aforesaid, afterwards, to-wit, on the same day and year last aforesaid, falsely, wickedly and maliciously, wrongfully and unjustly, did compose and publish and cause and procure to be published a certain other false, scandalous, malicious and defamatory libel of and concerning the said James, containing, amongst other things, certain other false, scandalous, defamatory and libelous matters of and concerning the said James, as follows, that is to say, `Hisfather (speaking of John H. Frazier and meaning the said James) has given so much way to the pleasures of Bacchus thatthe old man (meaning the said James) is at all times utterlyunqualified for business' (meaning and intending thereby to have it believed and understood that the said James was a common sot and habitual drunkard); by means of the committing of which said several grievances by the said Boon and (236) his wife Eliza, as aforesaid, he the said James hath been and is greatly injured in his said good name and reputation, and brought into public scandal, infamy and disgrace with and among his neighbors and other good and worthy citizens to whom the falsity of the said charge was unknown, and who thence have believed him to be an habitual drunkard and sot, unfit for business and unqualified for the usual intercourse of social life; wherefore, the said James saith that he is injured and hath *Page 120 
sustained damage to the value of three thousand dollars, and therefore he brings suit, etc."
The transcript having been filed by the appellee, we are now asked to inspect it and to withhold an affirmance of the judgment if such errors appear upon the face of the record as would be sufficient to reverse it. The Court is of opinion, for the reasons that will be given by my brother,Henderson, that under the circumstances of this case it is proper to look into the record. We therefore have considered the errors pointed out and will now give an opinion on them.
The first is that the husband and wife both come by their
attorney, whereas, being but one person in law, they could not do so. In support of the objection is cited the case of Maddox v.Wynne, 3 Salk., 62; but the error assigned there was that the husband and wife came by their attorneys — per attornatos
(237) suos — in the plural. The principle to be extracted from the case is that as they are but one person in law the wife cannot appoint an attorney. Therefore if an action be brought against husband and wife, if the husband appear by attorney, he shall enter an appearance for both. 5 Com. Dig., Pleader, b. 4. Nor is it error for them to appear by attorney, though the wife be under age, because the husband may by law make an attorney and appear both for himself and wife. 1 Show. Rep., 15. The doctrine is further illustrated by the form of defense given in the precedents: "And the said C. D. and E. F., his wife, by G. H.,their attorney, come and defend the wrong and injury," etc. 2 Chitty's Plead., 409. In the case before us the husband was obliged to join in the plea with his wife, Cro. Jac., 239, 288; and the attorney employed by him necessarily became the attorney of both, and must have pleaded for both. For these reasons I think the objection untenable.
It is further objected that as the words themselves contained in the writing do not impute any offense, but are libelous only by being understood to imply something, it is necessary that the *Page 121 
design in using the words should be first averred by way of introduction, and then their meaning stated by inuendo; and although an inuendo is stated here, yet the office of an inuendo is not to charge but merely to act as avidelecit to what has been stated.
Without pausing to consider whether the words charged in this declaration are so written, by way of allusion and reference, as to require explanatory allegations, whether it was necessary for the jury to find that they meant to convey the imputation of the plaintiff's being a lot and a drunkard, in order to enable the Court to understand them in that sense; but admitting, for the purpose of this argument, that such technicalities were necessary, I will proceed at once to inquire whether the necessary averments are put upon the record. (238)
The first count in the declaration charges that the defendants combined to cause it to be believed that the plaintiff was a common sot and habitual drunkard. The second count, upon which alone the judgment was rendered, charges them with "further contriving and intending as aforesaid." This further combination and contrivance relates to the same object, viz, to cause it to be believed that the plaintiff is a common sot and habitual drunkard. The introductory averments in the first count are thus connected with the second count, which then proceeds to state the libel, and concludes with an inuendo that its meaning and intention was to have it believed that the plaintiff was a sot and drunkard. The inuendo, therefore, does not enlarge or change the sense of the previous words, but is only explanatory of the matter previously expressed, by applying the libel to it. Nor is it of any consequence whether the extrinsic matter is introduced on the record by averment, recital or general inference, for if the introductory matters and inuendos appear upon the record they amount to sufficient averments. Cowp., 684. Upon the whole case, therefore, I think the judgment must be affirmed.