LEVI IVEY and others v. MARY McKINNON and others.

*Guardian and Ward—Prochein Ami—Partition—Decree.*

1. Where an infant sues or defends by guardian, the guardian must have a warrant, but a *prochein ami* need have none; and if in partition proceedings the interest of the latter is adverse to that of the infant, the decree therein will not on that account be disturbed unless fraud or collusion be established.

2. Where the decree in such case is impeached for error in law, by a proceeding in nature of a bill of review, it is not competent to introduce

other evidence to correct the statement of facts upon which the decree was made.

(*Latta* v. *Vickers*, 82 N. C., 501 ; *Stewart* v. *Mizell*, 8 Ired. Eq., 242 cited and approved.)

CIVIL ACTION tried at Fall Term, 1880, of CUMBERLAND Superior Court, before *Avery, J.*

Judgment for defendants, appeal by plaintiffs.

*Messrs. Hinsdale & Devereux*, for plaintiffs.
*Messrs. McRae & Broadfoot*, for defendants.

SMITH, C. J.  At spring term, 1867, of the superior court of law of Cumberland, a petition was filed in the names of Duncan McKinnon, Archibald McKinnon (an infant appearing by his next friend, Stephen J. Cobb), and of Nancy, Sarah, James F. and John W. McKinnon (appearing by their next friend, the said Duncan McKinnon), in which they allege that they are tenants in common of certain lands therein described and which descended to them from Robert McKinnon, Senior, and Robert McKinnon, Junior, both deceased, and pray for partition and an assignment of their shares in severalty, to-wit: to the petitioners Duncan and Archibald each one-third and to the other petitioners the remaining one-third part.   The order of partition was made and commissioners appointed to divide the lands, though no action in the premises was taken by them. ·

At fall term following, an amended petition, in the name of the same parties, was filed in which they represent that Duncan McKinnon, Senior, many years before by deed of gift, conveyed to his daughters, Catharine and Margaret, a tract of land in Cumberland county known as the "Ross place" and containing three hundred and ten acres, with a limitation over in case of their death without issue, to Robert McKinnon and his heirs ; that the daughters both died

without issue and also the said Robert, intestate, leaving as his heirs at law the petitioners Duncan, a son, Archibald, a grandson representing his deceased father of the same name, and the other petitioners, grandchildren, representing the share of their deceased parent, John McKinnon ; that in 1864, Robert McKinnon the elder, by deed of gift conveyed to his three sons, Andrew, Robert, and Archibald, three tracts of land, designated as the ". Home place" and con- taining six hundred and sixteen acres, with a proviso that if either should die without issue, his share therein should go to the donor's other children ; that John McKinnon died before the making of the deed, and Andrew and Robert afterwards, both without issue ; that the other son, Archi- bald, died in 1865 intestate leaving an only child, the pe- titioner Archibald; that Robert McKinnon, Junior, the brother of the petitioner, Duncan, and uncle of the others, died intestate and without issue, seized in fee of an estate in a tract of one hundred and fifty-seven acres, and in like manner the said Andrew died seized of an estate in fee of a tract of two hundred and ten acres, to both of whom the petitioners are heirs at law and entitled to said lands in the proportion mentioned.

The petitioners ask for a division of these lands and the assignment of one-third part in severalty of the "Ross place," and the two tracts devised from Robert and Andrew to each of the petitioners, Duncan and Achibald, and to the others as a class representing their deceased father, and that the " Home place" be divided as the court "shall de- clare the rights of the parties " thereto.

The decree for partition was made and commissioners ap- pointed and directed to allot one-third of the " Home place" to Duncan and two-thirds to Archibald, and to divide the other lands into three equal parts, assigning to each of them a share, and the other share to the other petitioners col- lectively. The lands were divided in accordance with the

order and report made to spring term, 1868, which was confirmed and ordered to be registered.

The present action begun May 5th, 1877, by the said infant children of John McKinnon, who were parties to the former proceeding and now appear by their next friend, Levi Ivey, since intermarried with their mother and coplaintiffs in the action against the defendants, infant children of Duncan McKinnon, who has since died, and the widow and infant children of Archibald McKinnon also deceased, has for its object the setting aside the decree of partition which declares the rights of the parties and all subsequent proceedings pursuant thereto, to the end that there may be a re-division, allotting to the plaintiffs an equal share in all the lands, and they assign in their complaint the following grounds therefor:

1. That the former proceedings were without their knowledge.

2. That Duncan McKinnon who assumed to act as their next friend was not legally constituted such and could not bind them.

3. That the attorneys who conducted the proceeding had no authority to represent them.

4. That Robert McKinnon the donor was incompetent to make the deed and it was obtained by undue influence; and

5. That the decree is erroneous in law in that they are excluded in the division of the "home place," to which under the deed they were entitled to an equal share with the other tenants.

Answers were put in to the complaint and issues eliminated therefrom submitted to the jury, on the trial of which exceptions were taken by the appellants to the refusal of the court to admit certain testimony offered by them to give an instruction asked, and to the charge delivered, which are set out in the transcript. But a preliminary difficulty meets

the plaintiffs in the maintenance of their suit for the relief demanded which renders it needless to inquire into the sufficiency of the exceptions to the rulings of the court or the effect of the findings of the jury.

Infant plaintiffs in the absence of a guardian and with no legal capacity to act for themselves or to employ an attorney, pursue their remedies and assert their rights through the agency of a person, denominated their next friend, and acting in their behalf under the sanction of the court. He and not the infants is expected and required to protect their interests in the suit and to employ counsel; this is the practice in courts of equity. "When an infant claims a right or suffers an injury on account of which it is necessary to apply to a court of equity," says STORY, J., "his nearest relation is supposed to be the person who will take him under his protection and institute a suit to assert his rights or to vindicate his wrongs, and the person who institutes a suit in behalf of the infant is therefore termed his next friend." Story Eq. Plead., § 57. If an infant sues or defends by guardian, the guardian must have a warrant, but a *prochein ami* need have none. 6 Comyn Dig. Plead., 302.

It is objected, however, that the personal interest of the uncle in the subject matter was adverse to that of the infants whom as their next friend he undertook to represent and protect, and their rights in the premises not properly defended ought not to be concluded by the adjudication.

If this were true, he acted in this capacity for them with the permission and approval of the judge, and the results ought not to be less binding unless there was fraud or collusion in the matter, if the integrity of judicial action is to be upheld. But in fact there was no such opposition of interest between the infants and their next friend. Duncan is declared to be entitled to one-third part only of the "home place," the title to which is disputed in the complaint, and it is admitted that this is his rightful share in the land

upon the proper construction of the deed itself. The error assigned in the decree is that it gives to Archibald two-thirds of the tract and to the plaintiffs none, when they ought to have been allowed an equal share in that also. The antagonism is not between them and Duncan, but between them and Archibald, to whom, as they assert, their share has been wrongfully awarded. In *Latta* v. *Vickers*, 82 N. C., 501, the court in refusing to interfere in a case very similar to the present, use this language: "The proceedings were conducted in accordance with the established and regular practice, and the petitioner was represented by his next friend, in association with others whose interests were identical with his own. No imputation upon the integrity of the defendant's conduct is made, no suggestion of unfair means used to influence the action of the court, and no reason except the plaintiff's minority is now assigned for interference with the proceedings. * * *. If confidence is to be reposed in the action of the courts within the sphere of their jurisdiction and their judgments upheld, there is no basis upon which the plaintiff's claim can be enforced."

2. The decree itself is impeached for error in law in that it proceeds upon the idea of an estate in fee vesting in the sons under the deed of gift, with the contingent limitation over, whereas upon the proper interpretation of the instrument only a life estate is conveyed to them. The decision of the court upon the question of title rests upon the facts that are set out in the petition, and is now controverted only by the introduction of the deed itself as evidence to support the allegations of the complaint. The petition states the conveyance to be to the three sons of the donor with limitations over of the estates of such as should die without issue to his other children; that two of the sons, Andrew and Robert, did die without issue and Archibald left a son, the petitioner, bearing his name, and that the plaintiffs' father, under whom they claim, died before the execution of the

deed.   Upon this statement the court correctly held that the plaintiffs, being *grandchildren*, were not within the terms of the contingent limitation to the donor's children, and that these shares vested equally in Duncan and Archibald and thereby the latter became the owner of two third parts there-of.   If this ruling be correct upon the case made in the peti-tion, it cannot be reversed upon well established principles, by a proceeding in the nature of a bill of review.   Upon this point the case of *Stewart* v. *Mizell*, 8 Ired. Eq., 242, seems clear and conclusive.   In that case the land had been sold for partition under a decree of the court of equity of Bertie upon the application of the living and the issue of the deceased children of one Henry Cobb, from whom the land descended, and the fund had been distributed, the shares of the infants and femes covert being secured for their benefit.   The bill was filed by four of the children, or those representing such as were dead, against the other four children and their heirs, to obtain a reapportionment of the fund upon an alle-gation that advancements had been made to the defendants and their ancestors, equal in value to their share in the in-testate's descended lands.   The bill was dismissed, and RUFFIN, C. J., delivering the opinion and commenting on the conclusiveness of a judgment at law, founded on admis-sions in the pleadings, proceeds thus :  " Not less so is the decree of the court of equity upon facts found and declared, and *a fortiori*, on those admitted by the parties.   If it were not so, there would be no end to litigation in this court. Indeed the decree in this cause could be no more regarded as final than that which the present bill seeks to overturn upon the grounds merely that it was not in itself strictly right.   This is not an attempt to review the decree, for it is just what it ought to have been and what the court was ob-liged to pronounce according to the concurring allegations of all the parties."

The rule is thus stated in clear and concise terms by Mr.
42

Justice STORY: " In regard to errors in law, apparent upon the face of the decree, the established doctrine is that you cannot look into the *evidence in the case in order to* show the decree to be erroneous in its statement of the facts. That is the proper office of the court upon an appeal. But *taking the facts to be as they are stated to be on the face of the decree,* you must show that the court have erred in point of law." Then referring to the variant forms of decrees as drawn in England and in the United States where the facts are not usually declared, he adds: " But for the purpose of examining all errors of law the bill, answers, and other proceedings are in our practice as much a part of the record before the court as the decree itself, for it is only by a comparison with the former that the correctness of the latter can be ascertained." Story's Eq. Plead., § 407.

In the case before us the error is proposed to be shown by the production of the deed which was not in evidence when the assailed decree was entered, and the construction of which is relied on to correct the statement of facts.

This, as the citations show, is not admissible. The judgment must therefore be affirmed, and it is so ordered.

No error.                                              Affirmed.