M. K. GRANTHAM and others v. J. B. KENNEDY and wife and others.

*Equity, relief by—Judgment—Estoppel—Married Women—Infants.*

1. A court of equitable jurisdiction, in proceedings to review judgments at law or final decrees in equity, does not proceed upon the ground that they are erroneous, either in fact or in law, but simply where they are unconscientious and their enforcement would be a fraud.

2. A judgment obtained by fraud is not, strictly speaking, the judgment of the court.

3. Reasonable diligence and good faith are required in applications for relief in such proceedings, and it will not be granted if material matters were omitted from the former case, which were

known or might by reasonable diligence have been known at the time of the trial.

4. Married women and infants are estopped by judgments, in actions to which they are proper parties, in the same manner as persons *sui juris.*

5. Where a record is informal and embodied in the minutes of the court, but from the minutes a formal record can be drawn, it is sufficient for the purposes of estoppel.

6. Where, in 1865, land was divided under regular proceedings for that purpose, to which the plaintiffs and defendant in this action were parties, and each was put into possession of the share allotted to him, and it was afterwards attempted to set aside such proceedings on the ground that the present defendant was not a tenant in common when the proceedings were had; *It was held,* that as no fraud was alleged in the partition proceedings, and as the facts now alleged should have been then known, the plaintiffs are estopped, and equity will not aid them, although some of the present plaintiffs, at the time of such partition, were infants, and some were femes covert.

( *Woodfin* v. *Smith,* 1 Dev. & Bat. Eq., 451; *Dudley* v. *Cole, Ib.,* 429; *Bissell* v. *Bozman,* 2 Dev. Eq., 154; *Radcliff* v. *Alpress,* 3 Ired. Eq., 556; *Pemberton* v. *Kirk,* 4 Ired. Eq., 178; *Deaver* v. *Erwin,* 7 Ired. Eq., 250; *Stewart* v. *Mizell,* 8 Ired. Eq., 242; *Kincade* v. *Conley,* 64 N. C., 387; *Ivey* v. *McKinnon,* 84 N. C., 651; *Mills* v. *Witherington,* 2 Dev. & Bat., 433; *Gay* v. *Stancell,* 76 N. C., 369; *Deloach* v. *Worke,* 3 Hawks, 36; *Green* v. *Branton,* 1 Dev. Eq., 500; *Tick* v. *Pope,* 81 N. C., 22; *Capehart* v. *Mhoon,* 5 Jones Eq., 197, cited and approved.)

CIVIL ACTION, tried at Fall Term, 1883, of JOHNSTON Superior Court, before *McKoy, J.*

The action was brought to set aside a decree of the late court of pleas and quarter sessions, upon the ground of mistake alleged to have occurred in a proceeding for the division of certain land between the parties as tenants in common.

The case agreed states that one Young Bridgers died intestate in 1844, seized of the land described in the pleadings, and leaving as his heirs-at-law the following named children:

Caroline, who married the plaintiff Grantham while she was under twenty-one years of age; Laura, who married the plaintiff Bellenger while under said age, and died since this suit was brought, and whose heirs at-law have been made parties plaintiff; Newitt Bridgers and George Bridgers, both of whom died intestate in 1864 without issue, and leaving their sisters, Caroline and Laura their heirs-at-law, who were of the whole blood, and Helen Kennedy (then Irby) of the half blood on the maternal side.

After Young Bridgers' death, his widow took dower in the land and sold her interest in the same to one Lindsay, who sold to the plaintiff Grantham. About eighty-four acres of the land in controversy were included in said dower, and about forty acres thereof were not covered by the dower.

The lands of the deceased were divided by petition in the late county court among his children, to-wit, the plaintiffs Caroline and Laura, and the said Newitt and George, by setting apart the shares of said Caroline and Laura.

At August term, 1865, of the court of pleas and quarter sessions, a petition *ex parte* was filed in the names of the plaintiffs Grantham and wife, and Bellenger and wife, and Helen Irby (now Kennedy and a defendant in this suit) by her guardian *ad litem*, P. T. Massey, for partition of the lands of said Newitt and George Bridgers. The said Caroline was over, and Laura was under the age of twenty-one years when the petition was filed and the decrees made in the case, allotting to the petitioners their several shares in said lands; and the portion set apart to said Helen in the land now in controversy, it being alleged that Helen was not of the blood of the said Young Bridgers.

The case further states that the plaintiffs were not advised of the mistake and error in the division of the land until September, 1880, and did not, prior to that time, set up any claim to the share which had been allotted to the defendant Helen.

The facts relating to a sale of the land under a mortgage and the rights of the purchaser, are not necessary to an understanding of the point decided in the opinion, and are therefore omitted.

The court below gave judgment for the defendants, and the plaintiffs appealed.

*Mr. W. T. Dortch*, for plaintiffs.
*Messrs. E. W. Pou* and *F. H. Busbee*, for defendants.

MERRIMON, J. After parties have litigated their alleged rights, and these have been settled and established by decrees and judgments in the course of judicial procedure, and the time has passed by within which such decrees and judgments may ordinarily be reviewed and corrected, either in the court making them or in the appellate court, courts are very reluctant to disturb them. This is necessarily so. Otherwise, there would be no end to litigating the same matter. It might be renewed as often as the caprice or advantage, however attained, of a party might suggest. Confidence in judicial proceedings would be destroyed. No one could be sure that his rights were settled and secure, or that a purchase at a judicial sale would be upheld, and there would be a constant tendency to tamper with and corrupt the administration of public justice. If courts may, at will, temporize and vacillate in deciding cases that come before them; if they may decide them one way this year, and re-hear and decide them another way the next; or after the lapse of years, because of some new views of the law involved, or another state of facts that the parties might have established in the first trial and did not, they would certainly become corrupt and contemptible, and an intolerable public evil. A greater calamity could scarcely happen to society.

It is a fundamental principle in the law, that there shall be an end to every litigation, and when that end is honestly and fairly reached, it should never afterwards be interfered with, even though the court erred as to the law, or the parties failed to produce all the evidence attainable at the time of the trial. The law gives every litigant his day in court, fair and impartial opportunity to be heard both as to the law and the facts of his case; and it as certainly implies that when he has thus been heard and judgment is entered, this shall be the end of the matter. The rights of the parties to the litigation, the rights of all persons claiming and taking benefit directly or indirectly under it, the integrity and stability of judicial proceedings, the good order of society, and the general purpose and spirit of government, alike require that rights once honestly and fairly settled by a judicial proceeding according to the course of the law, shall never afterwards be disturbed.

Hence courts of equity in this country and England have refused aid in all cases where their action would be tantamount to the exercise of appellate jurisdiction, or granting a second opportunity to present a case upon its merits, whether as to law or facts. Such a court will never set aside or enjoin the enforcement of a judgment on the ground of error or mistake in the judgment of a court of law. Other grounds must be assigned than error of law. All errors of decision and procedure must be settled in the tribunal in which they originated, or by some appellate tribunal. It is not the purpose of courts of equity, or courts having equitable jurisdiction, to correct the errors or reverse the judgments of courts of law, or to enable a party to get two trials, each under different forms of procedure.

It is not meant by this that in no case will a decree or judgment entered according to the forms of law be set aside, declared invalid, annulled or enjoined. On the contrary, a court of equity will take jurisdiction in many cases and

grant such relief.  It will protect a party against an uncon-
scientious advantage secured by his adversary through
his own fraud, or fraudulent surprise, or because of some
unavoidable accident or like mistake of his own.  If it
clearly appears in an action brought for the purpose of set-
ting aside, or nullifying a decree, or enjoining the enforce-
ment of a judgment, that it is iniquitous and against con-
science to enforce it, because the party injured failed to
make proper proofs, or to avail himself of a good and just
defence as he might and would have made but for the fraud
of the adverse party, or surprise occasioned by him, or be-
cause of some accident or mistake on his part unattended
with any fault or negligence on his part, relief will be
granted.  It must appear, however, that the party complain-
ing was not negligent, but exercised reasonable diligence
in prosecuting, or defending the action (as was his duty) in
which the decree or judgment complained of was given.
Hence in *Woodfin* v. *Smith*, 1 Dev. & Bat. Eq., 451, it was
held, that a court of equity would not enjoin the collec-
tion of an execution because the defendant at law had paid
it, when he might have proved that fact on the trial in the
action in which the execution was issued, and was not by
fraud or surprise prevented from doing so.

Relief will not be granted if matters material were
known, or might by reasonable diligence have been known
at the time of the trial.  Equitable relief will not be
granted to a party against a judgment, because of a good
ground of defence, of which he was ignorant until after
the judgment was given against him, unless he shows
that by the exercise of reasonable diligence he could not
have discovered it in time for the trial, or that he was pre-
vented from the exercise of such diligence by fraud or sur-
prise on the part of the opposing party, or by accident or
mistake, unmixed with negligence on his part.  Fraud, or
fraudulent surprise, vitiates the judgment, as it does every-

thing into which it enters. In *Dudley* v. *Cole,* 1 Dev. & Bat. Eq., 429, Chief Justice RUFFIN said: "We assume that the judgment is right, so far as respects the action of the legal tribunals themselves; and if that were not so, this court will not undertake to revise them for the purpose of correcting either mistake of fact or error in law. But when the party practices a deception upon the court of law, and thereby precludes the opposite party from all defence; when, by means thereof, he gets a judgment for a sum of money, of which no part is due; and then further by concealment and falsehood defeats every fair effort made by the ordinary legal means for re-examining his judgment, a court of equity will restrain such party from the unconscientious use of legal advantage thus fraudulently obtained, and thus fraudulently kept up." In truth, a judgment infected with fraud is in no just sense the judgment of the law, and when such fraud is made to appear, a court of equity upon application will not allow it to be enforced. The law abhors fraud, and defeats and thwarts its purposes through equitable jurisdiction.

It must be added, that reasonable diligence and good faith in applying for equitable relief are essential in all cases. In writing on this subject Mr. SPENCE says: "Negligence or delay in this, as in every other instance in which the court of chancery is called upon to interfere, may extinguish or defeat the best founded claim. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence, but where these are wanting, the court is passive and does nothing." 2 Spence's Eq., Jur. 60.

In support of what we have here said, we cite *Bissell* v. *Bozman,* 2 Dev. Eq., 154; *Radcliff* v. *Alpress,* 3 Ired. Eq., 556; *Pemberton* v. *Kirk,* 4 Ired., Eq., 178; *Deaver* v. *Erwin,,* 7 Ired. Eq., 250; *Stewart* v. *Mizell,* 8 Ired. Eq , 242; *Kincade* v. *Conley,* 64 N. C., 387; *Ivey* v. *McKinnon,* 84 N. C., 651; Freeman on

Judg , § 485, *et seq.*, and cases there cited; Adams Eq., 794; Story Eq., Pl. § 426; Story Eq., Jur., §§ 529, 1521, *et seq.*

Now, applying these principles of law to the case before us, it is very clear, that the action cannot be sustained.

At August term, 1865, of the court of pleas or quarter sessions of Johnston county, the plaintiffs and the defendant Helen Kennedy, then Helen Irby, and an infant suing by her next friend, P. T. Massey, filed their *ex parte* petition in that court, alleging that they were tenants in common of the land specified in the petition, and praying the court to order and .direct partition thereof among them; an order appointing commissioners for that purpose was duly entered, the commissioners partitioned the land, allotting one part to the defendant Helen, and made a report of their action to the court, and this report was duly confirmed, and all proper orders and decrees were made in that respect.

The decree in the partition proceedings mentioned, is conclusive upon all parties to it, and it estops the plaintiffs in this action to deny the title of the defendant Helen Kennedy to that part of the land allotted to her, if the said proceedings are valid. *Mills* v. *Witherington,* 2 Dev. & Bat., 433; *Stewart* v. *Mizell, supra; Gay* v. *Stancell,* 76 N. C., 369.

The objection that the record of the court in the proceedings mentioned are indefinite, loose, informal and imperfect, cannot be sustained. Upon examination, we find the record is informal and embodied in the *minutes* of the court, but it contains all that is essential, and from it, if need be, the formal record could be easily drawn out. It is fuller in setting forth what the court did than is common in like cases. It is seldom, that the records are drawn out in formal order; they are kept in the minutes of proceedings of the court, and when these contain what is essential they are upheld as the record. *Deloach* v. *Worke,* 3 Hawks, 36.

It was insisted in the argument, that the *femes* plaintiff, were both married, and each was an infant at the time of

her marriage, and one of them was an infant as well as married, at the time of the proceedings for partition of the lands mentioned. It is settled, that nevertheless, each of them is concluded by the decree and estopped by it to deny the defendant Helen's right to the land allotted to her. Married women whose husbands are parties with them are as much bound by decrees and judgments to which they are parties, as persons *sui juris*, unless the judgment was allowed by the fraud of the husband and combination with another. The husband is presumed to care for and protect the interests of the wife, whether she be of full age or not. She would not be bound by the fraudulent action or connivance of the husband. There is, however, no suggestion of any such fraud in this case. *Green* v. *Branton*, 1 Dev. Eq., 500; *Vick* v. *Pope*, 81 N. C., 22.

It is stated in the case agreed, that the defendant Helen was not of the blood of Young Bridgers, the ancestor, from whom the land descended through two of his sons to the *femes* plaintiff, their sisters of the whole blood, but was the only daughter of the widow of the said Young Bridgers, and mother of the *femes* plaintiff, by a second marriage with one Irby. It is further stated, that the plaintiffs were not advised of the *mistake and error*, in alleging in the petition for partition that the defendant Helen was a tenant in common with the *femes* plaintiff of the land, until September, 1880, and did not until that time lay any claim to the share of the land allotted to her.

It is not denied, however, that the *femes* plaintiff knew of the exact relationship existing between themselves and the defendant Helen, or that their husbands knew of it before, at the time and ever since the petition for partition was filed in the court. There was no mistake of fact on the part of any one of the parties to the proceeding, nor was there any fraud or bad faith on the part of the defendant Helen, nor did she occasion any surprise or mistake in any

respect. She was then an infant, and took only what the plaintiffs admitted of record she was entitled to have, and what the court decreed to her at their suggestion, and with their consent.

So that, the plaintiffs simply misapprehended the legal rights of the *femes* plaintiff as the heirs at law of their deceased brothers. They allege, that they thought their half sister shared with them as such heirs at law.

It may be said, that ignorance of the law does not afford ground for relief, as sought in this action. *Ignorantia legis neminem excusat.* But if it be granted that it could in this or any like case, the plaintiffs do not pretend that they were misled in any respect; there was no fraud on the part of the defendant Helen; there was no mistake of fact, nor was there surprise. It is not alleged that the plaintiffs were ignorant of the state of the law, at the time of the partition or that they consulted counsel and were by him misled. The statute regulating descents in such cases was plain. And besides, this court had repeatedly construed it at the time the petition for partition was filed. The plaintiffs have neglected for fifteen years to take legal advice, and how at last they came to learn that they had misapprehended the law, does not appear. The rights of third parties in the meantime have supervened. The plaintiffs were neither circumspect, vigilant nor diligent, and in no aspect of the case, is any ground for interference with the decree confirming the report of partition presented. *Capehart* v. *Mhoon,* 5 Jones' Eq., 178; Story's Eq., Jur., § 111, *et seq.*

What we have said disposes of the action, and we need not consider other exceptions incidental to the main one upon which we have passed. Judgment affirmed.

No error.                                                    Affirmed.