SMITH v. BRUTON.

(Filed November 30, 1904).

1. ARBITRATION AND AWARD—*Husband and Wife—Const. N. C., Art. X, sec. 6—The Code, sec. 1832.*

   A married woman cannot bind herself by agreeing to arbitrate the question of title to land owned by her.

2. PLEADINGS—*Consideration—The Code, secs. 268, 178.*

   An allegation of new matter in an answer not relative to a counter-claim is deemed controverted by the plaintiff.

3. HUSBAND AND WIFE—*Deeds—Judgments.*

   A married woman can be bound only by her deed, duly executed with the written assent of her husband and with her privy examination, or by the judgment of a court of competent jurisdiction.

CLARK, C. J., dissenting.

ACTION by M. A. Smith against J. C. Bruton and others, heard *by Judge O. H. Allen,* at April Term, 1904, of the Superior Court of MONTGOMERY County. From a judgment for the defendants the plaintiff appealed.

*Shepherd & Shepherd,* for the plaintiff.
*Adams, Jerome & Armfield* and *H. M. Robbins,* for the defendants.

MONTGOMERY, J. This action was brought by the plaintiff to recover possession of a tract of land of which she claims to be the owner. The defendants contest her claim on the grounds, first, that they and those under whom they claim have been in possession of the same for fifty years, and, second, that the plaintiff, before this suit was brought, had entered into an agreement with Adelaide Kron and Elizabeth

Kron, who claimed title to the land, to enter into an arbitration to have settled the title thereto; that the arbitration was had and an award made and returned to Court in which the title to the property was adjudged to be in Adelaide and Elizabeth Kron; that the award was made a judgment of the Court and that the plaintiff is estopped by that award and judgment from claiming the land. In their answer the defendants further averred that although the plaintiff was a married woman at the time of the submission of her case for arbitration, and has since that time been continuously a married woman, yet that she had been abandoned by her husband at the time she entered into the agreement and had not been living with him for more than ten years, and has not since lived with him; that she was at that time and has ever since been a free trader. In her reply the plaintiff said that she had not been abandoned by her husband "as alleged in the answer."

The main question in the case then is, Can a married woman without joinder of her husband consent to have the title to her real estate determined by the award of arbitrators? The defendants contend, however, that it will not be necessary to decide that question in this case. Their counsel insist that that statement in her reply, wherein she says that her husband has not abandoned her "as alleged in the answer," is not such denial of the defendant's averment as is required by The Code, and that therefore it is to be taken as true that her husband had abandoned her, by her own admission; and that that being so she had a right not only to consent to the arbitration, but even to convey the land by deed without the written assent of her husband if she wished to do so. If it should be conceded that the plaintiff's reply, in the respect complained of, was not sufficient to amount to a denial of the charge of abandonment by her husband, yet it is to be remembered that no reply on that question on the part of the

SMITH v. BRUTON.

plaintiff was necessary. The matter averred on the part of the defendants was not a counter-claim, and was deemed to be controverted by the plaintiff as upon a direct denial or avoidance. The Code, sec. 268.

The arbitrators in their award had nothing to say about whether or not the plaintiff had been abandoned by her husband. They declared that she was a married woman during the period of the arbitration and award and had children, and the Court held that she was estopped in the present action by the judgment rendered in the Superior Court upon the award of the arbitrators.

The defendants further contend that as the plaintiff admitted in the agreement to arbitrate that she was a citizen of this State, and in her declaration to become a free trader she stated that her husband was a citizen of Arizona, she had the right to convey her land by deed under express decisions of this Court, and, therefore, if she had a right to convey the land by deed she would have a right to submit to arbitration the settlement of her title. But the decisions of this Court which counsel rely upon do not sustain their position. We were referred to *Hall v. Walker,* 118 N. C., 380, and *Levi v. Marsha,* 122 N. C., 565. In the first-mentioned case the Court said: "The sole question is whether section 1832 of The Code was constitutional. That section is as follows: 'Every woman whose husband shall abandon her or shall maliciously turn her out of doors shall be deemed a free trader, so far as to be competent to contract and be contracted with, and to bind her separate property, * * * and she shall have power to convey her personal property and her real estate without the assent of her husband.'" In the case just above referred to the plaintiff's husband had deserted and abandoned her for five years, had been continuously out of the State, had not been seen or heard from by the wife, and

137——6

he had in no way contributed to the support of herself or her family. In the case before us there was no such evidence offered, and no finding by the arbitrators in their award of abandonment or desertion, failure to support or cruelty on the part of the husband.

In *Levi v. Marsha, supra,* the husband resided in Syria and had never been in the United States either as a resident or as a visitor. The wife contracted a debt with the plaintiff, and the sole question was whether she was liable on her personal contract.

A married woman in North Carolina can be bound as to her land in only two ways: By her deed duly executed with the written assent of her husband and with her privy examination, or by the judgment or decree of a court of competent jurisdiction. As to the requirements of the first method, the decisions of this Court are very numerous, and we will only mention those of *Scott v. Battle,* 85 N. C., 184, 39 Am. Rep., 694; *Farthing v. Shields,* 106 N. C., 289, and *Smith v. Ingram,* 130 N. C., 100, 61 L. R. A., 878; and as to the latter method, the cases of *Green v. Branton,* 76 N. C., 500; *Smith v. Ingram, supra.* But it may be asked, Does not the present case fall within the decisions of the two last mentioned cases? Was there not a judgment and decree against the plaintiff in a court which had jurisdiction of her person and of her property, and, if so, was she not bound by that decision and judgment? Undoubtedly a married woman would have the right under section 178 of The Code to bring an action, without the joinder of her husband, to have settled the title or any right connected with her separate real estate, and if, upon the regular trial and disposition of that suit, a judgment or decree of the Court should be rendered against her she would be bound by it, and the judgment would be thereafter a matter of estoppel by record in any subsequent claim she might make to the property. The reason for that

is that the married woman's interests are under the eye of the Court, and its judgment or decree is based upon the law as it is written and applied to the conditions and facts brought out and developed in the case.

In an arbitration the matter is entirely different. Arbitrators are not bound to make their award according to law, nor are they bound to weigh the evidence; and the Court will make a judgment of the award, if it is regular on its face and there are no evidences of fraud, without any inquiry as to how the arbitrators arrived at their conclusion. So it is perfectly evident that if a married woman could dispose of her real estate, without the joinder of her husband, by submitting her title to arbitrators, that part of section 6, Article X, of the Constitution which ordains that a married woman, with the written assent of her husband, may convey her real estate, would be a dead letter. If such were the law, married women, from design or by means of fraud and deceit, might by arbitration be deprived of their real estate and the husband deprived of his rights therein before he had knowledge of the matter, or the power to prevent it in either case. If a married woman could dispose of her real estate through arbitration, she would be enabled by an indirect method to do that which the Constitution and the laws prohibit, and that will never be allowed.

That the plaintiff was a free trader can make no difference. As we have said, there are only two ways by which a married woman can dispose of her real estate—one by deed, with the written assent of her husband with her privy examination, and the other by decree or judgment of a court of competent jurisdiction. However, the question of the right of a free trader to charge her separate estate does not arise in this case, for the record shows that the matter involved here did not concern any transaction other than the settlement of the

ownership of the land. It does not appear that she had any creditors or owed any debts.

We omitted to state in the beginning of this opinion that the defendant's counsel state in their brief that the appellant has filed no exceptions to the judgment of the Court below.

The plaintiff took a nonsuit after an intimation of his Honor that she was estopped by the award and judgment. We do not understand how this statement crept into the brief of the defendants. We know, however, that it was an inadvertence. There was a statement in the judgment that the nonsuit was taken by the plaintiff because of his Honor's intimation, and from the judgment the plaintiff appealed. Besides, the assignment of error (and there is only one) is in these words: "That the Court erred in holding that the record set up in the answer was *res adjudicata* or an estoppel against the plaintiff, and that the plaintiff could not recover upon the admission of the plaintiff that she could not recover if such record did constitute an estoppel or *res adjudicata.*"

Reversed.

WALKER, J., took no part in the decision of this case.

CLARK, J., dissenting. This is an action for the recovery of land. The only exception in the record is to the ruling of the Court that a former judgment between the same parties for the same cause of action is an estopped upon the plaintiff in this action. The plaintiff brought an action for the recovery of a tract of land heretofore, and in its prosecution she submitted to an arbitration, as rule of court, which embraced also the subject-matter of this action. In that action it was adjudged in the Superior Court, at Spring Term, 1891, after reciting both matters in controversy as stated in the agreement therein to arbitrate under rule of court, "that the plaintiff taking nothing by this action, and judgment is rendered

against plaintiff * * * for costs." The award was made by Marmaduke S. Robbins and S. J. Pemberton, with Kerr Craige, umpire, and was approved by the Court without objection from her. She could hardly have suffered any injustice; but, if so, she should have objected then, not now.

The Code, sec. 178 (1), provides "When the action concerns her separate property she (a married woman) may sue alone." This action concerns the plaintiff's separate property, and she brought the former action (as she also brings this) without joining her husband. "If she may sue, she must be bound by a judgment in her favor; if it is against her, she must be bound by it also." Herman on Estoppel, sec. 174. In the former action she entered into an agreement of arbitration, the award to be a rule of court, and upon the coming in of the award judgment was entered thereon as above stated, the plaintiff making no exception nor taking any appeal. As she was a party to the action alone and *sui juris* then (as she is now) by virtue of the statute, she is bound by orders in the cause assented to by her or not excepted to, and especially by the final judgment which referred to and adjudged the finding of the arbitrators. If she had any objection to the awards, either for misconduct of arbitrators, or any alleged incapacity in her, a party to the action, to consent thereto, she was certainly under no incapacity to raise that objection then to judgment being entered thereon; and not having done so she is bound by the judgment like any other person bringing an action in her own right. If she was not bound by the arbitration and award she was in court and should have said so. She is certainly bound by the judgment thereon. When that judgment was interposed as a bar to this action, the Court properly held that the judgment was an estoppel, "it being admitted that these lands are the *same lands* described in the plaintiff's complaint in the former action"—thus recognizing the agreement to arbitrate as an

SMITH *v.* BRUTON.

amended complaint, which it was in effect. A judgment cannot be thus collaterally attacked. The plaintiff should bring a direct action to set the former judgment aside, and though in such action a prayer for recovery of the land might be joined, there is in this complaint no allegations impeaching the former judgment, nor indeed any reference even thereto.

Objection is made that the former action as originally brought did not embrace this cause of action. But this, as well as the other cause of action, concerned only her separate property, and she could have sued for this as well as that, without joining her husband. The Code, sec. 178 (1). She could have put both into the complaint when first stating her cause of action. By leave of Court or by consent of parties the complaint could have been amended to embrace it. This was in effect done when both parties in a written agreement set out the matters in controversy referred by them to the arbitrators under rule of court. This, as to parties *sui juris,* would certainly be conclusive as to all matters embraced in such agreement, award and judgment thereon, for after judgment it cannot be objected that no complaint at all was filed. *Robeson v. Hodges,* 105 N. C., 50, and numerous other cases cited in Clark's Code (3 Ed.), p. 190. Here, the agreement in writing carefully recited the matters in controversy, as did the award which was approved by the judgment of the Court. As to this matter, which is an action concerning her separate property, the *feme* plaintiff is made *sui juris* and authorized to "sue alone" without joining her husband (The Code, sec. 178 (1), and hence is bound by the judgment as fully as any one else who is authorized to sue.

The former prevailing notion of the inferiority of married women to *femes sole* was based upon the fact that originally wives were bought or captured in war and were chat-

SMITH *v.* BRUTON.

tels.  Shakespeare, who usually stated the English law of his time with accuracy, makes Petruchio say of his wife:

> She is my goods, my chattels; she is my house,
> My household stuff, my field, my barn,
> My horse, my ox, my ass, my anything.

But in England any distinction between the property or other rights of a married woman and her single sister has long since been abolished, root and branch, as has been done in the English colonies and in most of the States of this Union.  In this State, the distinction as to property rights between *femes sole* and *femes covert* was abolished by the Constitution of 1868, Art. X, sec. 6, save that as to conveyances of realty by a married woman the written assent of the husband was required.  *Vann v. Edwards,* 135 N. C., 661. It should be noted that this requirement is not any lingering idea of the inferiority of married women to single ones, or intended as a protection for a half-emancipated class, but is a provision for the exactly opposite purpose of protecting the husband's courtesy (if not abolished by legislation) and is merely a correlative of the wife's joining in the husband's conveyances to bar dower.  Accordingly the statute empowers a woman to sue alone for her separate property, and the Statute of Limitations runs against her if she does not sue.  Thus she was *sui juris* in the former litigation, competent to amend her complaint by the recital of any additional matters she wished to be passed upon and bound by the judgment upon the award.  By no process of reasoning, nor of metaphysics, nor stretch of imagination, can a judgment against the plaintiff in an action of ejectment be called a "conveyance" (unless collusion was charged and shown). The wife must join in conveyances of the husband to bar dower, but if he suffer an adverse judgment in an action to recover land, the judgment is not invalid because she is not a

party to the action. This case is stronger, for the wife is expressly empowered by statute to sue alone. Even if the judgment had been broader than the complaint, or if there had been no complaint, the judgment unappealed from was binding upon her as upon any one else authorized to bring an action. This Court has often so held. Here the judgment was obtained in an action brought by the married woman. This Court has often held that a married woman is bound by a judgment even when she is brought into court as a defendant and against her will. In *Vick v. Pope,* 81 N. C., 22, *Smith, C. J.,* says that where a husband and wife are sued jointly it is the duty of the husband to set up the wife's disability, and if he fail to do so the wife cannot have the judgment against her set aside on the ground of her incompetency to contract. He says that a judgment against a married woman appearing in the suit by counsel of her husband's selection is as binding as one against any other person, unless it be obtained by the fraudulent combination of the husband with the adverse litigant. He pertinently added at page 26: "If it were otherwise, how could a valid judgment ever be obtained against a married woman and how could her liability be tested? If she is disabled from resisting a false claim, how can she prosecute an action for her own benefit when nothing definite is determined by the result? It is no sufficient answer to say that the defendant's execution of the note with her husband did not bind her. The judgment conclusively establishes the obligation, and such facts must be assumed to exist as warranted its rendition, inasmuch as neither coverture nor any other defense was set up in opposition to defeat it. As, then, a married woman may sue, and with her husband be sued on contracts, they and each of them must at the proper time resist the recovery as other defendants, and their failure to do so must be attended with the same consequences." This case has often been cited with ap-

proval on this point, among many other cases, in *Jones v. Cohen,* 82 N. C., 90; *Grantham v. Kennedy,* 91 N. C., 156; *Williamson v. Hartman,* 92 N. C., 242; *Neville v. Pope,* 95 N. C., 351; *Wilcox v. Arnold,* 116 N. C., 711; *Strother v. Railroad,* 123 N. C., 198.

This is a stronger case, for here the plaintiff brought the former action *sui juris* as authorized by the statute; she selected her own counsel, agreed to the arbitration as a rule of court, and made no objection to the judgment upon the award, which she was fully as competent to do in that action as she is in this, which is likewise brought by her suing alone. In the former proceeding, the Court unquestionably had jurisdiction, and if there was any defect it was by error in entering judgment upon the award and that was cured by failing to object and appeal. *Neville v. Pope, supra,* at p. 346.

In *Vick v. Pope, supra,* Smith, C. J., cites as authority *Taylor, C. J.,* in *Frazier v. Felton,* 8 N. C., 231, and *Green v. Branton,* 16 N. C., 504, in which the elder *Ruffin* says: "Married women are barred by judgments at law as much as other persons, with the sole exception of judgments allowed by fraud of the husband in combination with another. * * * She must charge and prove that she was prevented from a fair trial at law by collusion between her adversary and her husband, preceding or at the trial."

In *Neville v. Pope, supra,* judgment had been taken against a married woman before a justice of the peace, and it was (unlike this) a direct action to set aside the judgment, the plaintiff laying stress upon *Daugherty v. Sprinkle,* 88 N. C., 300, in which it had been held that such action could not be maintained, but that ground was overruled—*Judge Merrimon* following the three *Chief Justices* above named (*Taylor, Ruffin* and *Smith*) and speaking for a unanimous Court (*Smith, C. J.,* and *Ashe, J.*), said: "It may be that if the plaintiff in this case had made defense, pleaded her cov-

erture, and appealed from the adverse judgment given against her, she would have been successful; but she did not make defense at all, and as there was judgment against her according to the course of the Court, it must be treated as conclusive that the cause of action and the facts were such as warranted the judgment."

In *Grantham v. Kennedy, supra*, the same learned Court said: "Married women and infants are estopped by judgments in actions to which they are parties in the same manner as persons *sui juris*." Yet in none of the above cases did the married woman waive her coverture, but, being in court and not excepting to the judgment, she was held bound by it. But here the plaintiff went further and voluntarily went into court, waiving her coverture by suing alone, as the statute authorized her to do and as she is doing in this present action. This is not a motion to set aside the former judgment for excusable neglect or mistake, nor for irregularity, nor is it an action to impeach it for fraud. The judgment was taken according to due course upon an arbitration entered as a rule of court, signed by the plaintiff, and judgment was entered upon the award without objection from her or her counsel. After an acquiescence of nine years, this new action is brought for the same land whose title had been adjudicated by the former judgment. As our adjudications are uniform that "married women and infants are estopped by judgments in actions to which they are parties in the same manner as persons *sui juris*" (*Grantham v. Kennedy* and other cases cited, *supra*), his Honor below correctly so held.

No Error.