CLARK, C. J., dissenting.
Ejectment. It was admitted that the property in controversy had *Page 363 
belonged to Mrs. Sarah E. Wooten, wife of Shade Wooten, Esq., and that in June, 1893, she made a deed, purporting to convey the property. This deed, executed by herself alone was witnessed by E. W. Wooten, Jr., and was proved by the oath and examination of said witness and registered on such probate and that no privy examination of said Sarah E. Wooten was had. The name of Shade Wooten, the husband, did not appear in the body of the deed, nor did he, in any way, join therein, except that his written consent thereto, signed by himself, appeared on the back of the instrument. It further appeared that at the time said deed was made and delivered, said Sarah E. Wooten was a married woman, living with her husband, and that she was at the time a registered free-trader, according to the provisions of the statute, now Revisal, sec. 2112-2113 It was also admitted and agreed that, on the facts stated, if the deed referred to was not a valid conveyance, the plaintiff was the owner of the property; otherwise, not. The court, being of opinion that the deed in question was valid, so instructed the jury, and there was verdict for defendant. Judgment and plaintiff excepted and appealed.
Our Constitution, Article X, sec. 6, in reference to (445) the property of married women, provides: "The real and personal property of any female in this State acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations or engagements of her husband, and may be devised and bequeathed, and, with the written assent of her husband, conveyed by her as if she were unmarried." In the very year of its adoption, the Legislature, in the endeavor to carry out and give effect to this provision, passed an act requiring that in order to the validity of a conveyance or other instrument, affecting the "estate, right or title of any married woman in lands, tenements or hereditaments," her privy examination must be taken by the proper officer. Code, Civil Procedure, sec. 429, subsec. 6. Reenacted, with some slight modifications, Laws 1868-69, ch. 277, sec. 15. This enactment continued, in substance, through the various codes and laws on the subject, and appearing in Revisal 1905, sec. 952, is as follows: "Every conveyance, power of attorney or other instrument affecting the estate, right or title of any married woman in lands, tenements or hereditaments must be executed by such married woman and her husband and due proof or acknowledgment thereof *Page 364 
must be made as to the husband and due acknowledgment thereof must be made by the wife and her private examination, touching her voluntary assent to such instrument, shall be taken separate and apart from her husband, and such acknowledgment or proof as to the execution by the husband and such acknowledgment by the wife and her private examination shall be taken and certified as provided by law." Not long after the statute was enacted, the question was raised whether the requirement as to privy examination was not in conflict with the constitutional provision, and was finally brought before the Court, and in two cases at the same term and by unanimous decision, it was held that the act was constitutional. That it did not militate against the provision that a married woman could convey her property with the written assent of her husband, but only established a form by which this assent should be evidenced. Southerland v. Hunter, 93 N.C. (446) 310; Ferguson v. Kinsland, 93 N.C. 337. In this last case it was held: "That deeds conveying lands of femes covert must be jointly executed by both husband and wife," and that the requirement as to the wife's privy examination was constitutional. Speaking directly to the question, Smith, C. J., delivering the opinion, said: "The only point made by the appellant's counsel, is that the Constitution; Art. X, sec. 6, which secures to a married woman all the property acquired previous to and since her marriage, as her sole and separate estate, free from her husband's debts, and confers upon her power to devise and bequeath, and, with her husband's written consent, to convey it, as if she were unmarried, sanctions this mode (the assent of the husband being on a separate paper). But it is for the General Assembly to provide the method by which this right may be exercised, as it has done heretofore when her real estate was not less her own, and when she was permitted to convey it only by observing a prescribed form. The requirement that the husband should execute the same deed with his wife was to afford her his protection against the wiles and insidious arts of others, while her separate and private examination was to secure her against coercion and undue influence from him. These have been deemed prudent safeguards to insure freedom of volition and action on her part when she is disposing of her real property, and these are none the less necessary now, when she retains her full real and personal estate." Both before and since these decisions and through all the various cases on the law concerning the property of married women, this one thing has been steadfastly adhered to, that in order to convey a married woman's separate estate or fix a charge upon it, her privy examination is required. Bank v.Benbow, 150 N.C. 781; Ball v. Paquin, 140 N.C. 83; Smith v. Bruton,137 N.C. 79; Harvey v. Johnston, 133 N.C. 352; Bank v. Ireland,122 N.C. 571; Scott v. *Page 365 Battle, 85 N.C. 185, and authorities cited. In Bank v. Benbow the ruling is: "For a feme covert to bind her realty, to the payment of a note, she must execute a formal conveyance or some paper writing which in equity may be a charge upon her separate estate, accompanied by the written assent of her husband and her privy examination." In Smith v. Bruton, 137 N.C. at page 82, Montgomery, J., (447) delivering the opinion, said: "A married woman in North Carolina can be bound only in two ways, by her deed duly executed with the written assent of her husband and with her privy examination or by a decree of a court of competent jurisdiction. As to the requirements of the first method, the decisions of the Court are very numerous." These decisions too, and many others that could be noted, are to the effect that in order to a valid conveyance of a married woman's land, the assent of her husband must be included by his joining with her in the body of the deed. Such joinder is not required to charge her land, the written assent of her husband may be otherwise expressed, but to convey, the husband must join in the deed, and in both the privy examination is required. In Ball v. Paquin,140 N.C. 83, Connor, J., after deciding that the land of a married woman, under certain circumstances, may be charged by necessary implication, under a contract for repairs, entered into with the written consent of her husband and to which her privy examination had been taken, in reference to this last requirement, said: "It is evident that the judges were referring to the formalities with which such contracts should be executed. In Bankv. Howell, 118 N.C. 271, it is said that she can not charge her separate real estate `except upon privy examination.' In Bank v. Ireland,122 N.C. 571, the present Chief Justice, writing in that respect for a unanimous Court, referring to Farthing v. Shields, supra, and other cases, said: `Those decisions do not require that the charge shall be made by mortgage.' In so far as it was intimated that no privy examination was necessary, the then Chief Justice and other Justices did not concur. The conclusion is irresistible that where the contract has all of the elements required by the statute and is reduced to writing, assented to by the husband, and the wife is privately examined separate and apart from her husband, it is binding upon her separate real estate."
It is not seriously controverted that the cases referred to decide the question as stated, but it is contended that the present conveyance, lacking as it does both the joinder of the husband and the privy examination of the wife, should be upheld, by reason of the fact that the wife was registered as a free-trader, under sections 2112 and 2113 (448) of Revisal, but in view of other provisions of our statute law, bearing upon this question and authoritative decisions of courts here *Page 366 
and elsewhere, we are of opinion that these sections in question do not have the effect contended for. Section 2112 establishes the method by which a married woman may become a registered free-trader, and section 2113 provides that "the married woman therein mentioned shall be a free-trader and authorized to `contract and deal as if she were a feme sole.'" Both the words free-trader and the words "contract and deal" refer, in their ordinary acceptation, to contracts and trades in some business enterprise, and do not, primarily, include or describe conveyances of realty. It is urged that while the word "contract" might not have such significance, the word "deal" does, and the fact that this word is added necessarily shows an intent on the part of the Legislature to confer the power to convey the realty, but this we think an unwarranted deduction. Both words, as stated in their primary acceptation, refer to the ordinary bargains and trades incident to some business enterprise and these a free-trader may make. If there is a difference between the words, the term contract should be construed as referring to executory obligations, while deal would uphold her trades and bargains executed, but both, as a general rule, are terms which apply to the ordinary incidents of business. In Black's Dictionary, the word deal is said to mean, "to traffic, to transact business, to trade," etc. In 8 A. E., 846, the same definition is given. In Cyc. it is said that deal as a noun, as applied to intercourse between parties, refers to any transaction of any kind between them, but as a verb, it means to "traffic, to transact business, to trade." Accordingly, in both of these last publications, in describing the powers to be ordinarily exercised by a statutory free-trader, reference is made to those contracts usually incident to some business enterprise, as in 21 Cyc., 1338, where it is said: "When a married woman trades by authority of a statute, as afeme sole, she has all the powers and liabilities incident to her business. She may buy and sell on credit, execute notes, sue and be sued, and may be adjudged a bankrupt. She may hire assistants and clerks, (449) appoint agents and even employ the service of her husband." 15 A. E., 755, and Harris on Contract of Married Women, secs., 508-510 et seq. are to like effect.
So far as we have examined, in those States where a contrary ruling has been apparently made, the statute either conferred the power to convey realty, in express terms, or the powers arose by a decree of some court, fixing the married woman's status, and the decree, in terms, gave her the power to convey her land. And if a different principle was shown to obtain in other jurisdictions, it could not be allowed to prevail here, for the words to "contract and deal" are at best indefinite as to the question we are discussing and the significance contended for is not permissible in the face of the explicit declaration of our statute, "that *Page 367 
every conveyance, power of attorney or other instrument, affecting the estate, etc., of a married woman, must be executed by the husband, and the wife and her privy examination must be taken and certified as provided by law." There are no cases in our own Court that directly decide the question presented in this appeal, the power of a registered free-trader to convey her real property, without joinder of her husband and without her privy examination, but there has been reference to it at different times and so far as they bear upon it, their expression is against defendant's position. Thus in Smith v. Bruton, supra, a case in which the right of a married woman to enter into an agreement to arbitrate the question of title to her land, and in which it was decided that such agreement was not binding without joinder of her husband and her privy examination taken, Montgomery, J., delivering the opinion, among other things, said: "That the plaintiff was a free-trader, can make no difference. As we have said, there are only two ways by which a married woman can dispose of her real estate, one by deed with the written assent of her husband and her privy examination, and the other by decree or judgment of a court of competent jurisdiction." And in Wilkes v. Allen, 131 N.C. 279, it was urged that because the married woman, plaintiff, was a registered free-trader, the statute of limitations should run against her, but the court held otherwise on the ground that her position as free-trader did not affect the explicit language of the statute as it then was, that such statute should (450) not run against a married woman. We are not inadvertent to the cases of Vandiford v. Humphreys, 139 N.C. 65, and Hall v.Walker, 118 N.C. 377, in which conveyances by married women were upheld without privy examinations, but it will be noted that both of these were cases of abandonment and are regulated and controlled by a separate and distinct section of our Revisal, i. e., sec. 2117. That section, after providing that a married woman, abandoned by her husband, shall be deemed a free-trader, so far as to be competent to contract and to be contracted with and to bind her separate property, in express terms confers this power: "And she shall have power to convey her personal estate and her real estate without the assent of her husband." This additional provision is not contained in the section under which the feme covert acted, and the fact that in her case she was only given the power "to contract and deal," while in the case of abandonment, the power to convey real estate is expressly given, supports our conclusion that these words, "contract and deal," did not and were not intended to confer upon an ordinary free-trader the right to convey realty, except in the way provided by law.
We have been referred to several poems, sacred and profane, in which the word "deal" is given a more extended meaning than that *Page 368 
which obtains in this opinion, but these references, while, to some extent, persuasive, are far from convincing. It is well understood that in works of that character authors are allowed a broader sweep, in the matter of language, its use, pronunciation, and even its orthography than is ordinarily permissible, and we think it better, in construing statutes and instruments concerning the devolution and transfer of property, to follow the meaning established by tribunals charged with the duty of making authoritative deliverance on these subjects.
We are of opinion that there was error in the instructions given by his Honor, and that, on the facts established, the verdict and judgment should have been for the plaintiff.
Reversed.