WEEKS v. WILKINS.

(Filed March 29, 1904).

1. GRANTS—*Recordation—Public Lands.*

> The registration of a grant from the state, which described the land by metes and bounds and stated that the grant was in the same form as another named registered grant, was not defective because of the failure to copy the entire grant.

2. INFANTS—*Contracts—Limitations of Actions—Deeds.*

> Three years after majority is a reasonable time within which an infant must disaffirm a deed, and this is true though the deed passes only a remainder and the life-tenant is in possession.

ACTION by S. M. Weeks against J. T. Wilkins and others, heard by *Judge R. B. Peebles* and a jury, at April Term, 1903, of the Superior Court of SAMPSON County. From a judgment for the plaintiff the defendants appealed.

*F. R. Cooper,* for the plaintiff.
*J. D. Kerr* and *J. L. Stewart,* for the defendants.

CONNOR, J.   This action is prosecuted by the plaintiff against the defendants for the recovery of the land described in the complaint.   The defendants in their answer denied the plaintiff's title.   The plaintiff introduced the original entry book of Sampson County, containing the following entries: "May 12, 1791.   No. 256.   Arch Carraway enters 200 acres of land on Rye Branch, joining Elizabeth Bass line."   Grant from the State to Arch Carraway, Grant Book "B," p. 27, reading as follows: "No. 417.   Arch Carraway, 200 acres.   This grant to Arch Carraway for 200 acres of land are in same form as the aforesaid registered grant in this book, pages 1 and 2, only the persons named and the various courses of the same, to-wit:"   (Then follows a description of the land by metes and bounds).   "At New Bern, the 1st day of January, in the seventeenth year of our independence, and in the year of our Lord one thousand seven hundred and ninety-three.   (Then follows the signature of the Governor and Secretary of State.   This grant is registered March 10, 1798)."   Defendants objected upon the ground that the registration was imperfect, that the registrar should have copied the entire grant instead of a part of it, and referring to the registry of other grants for the evidence.   Plaintiff then offered in evidence the grant referred to in the Carraway grant which is the first grant in said book, and registered in full; the others are registered like the Carraway grant by reference to said first grant. Said first grant was admitted to be correct in form and correctly registered.   The objection was overruled and the defendants excepted.   We think the objection was properly overruled and that the registration was sufficient.

The plaintiffs then introduced deeds showing a chain of title from Carraway to Richard Warren and the will of Richard Warren devising the land to Hester Weeks and her children.

It was in evidence that Hester Weeks and her children resided on the land in controversy until the execution of the deed to Brittain A. Edwards, June 1, 1863. The plaintiff, by way of estoppel, and for the purpose of attacking the same, offered in evidence a deed from Hester Weeks and her children to Brittain A. Edwards, dated June 1, 1863. This deed is signed by Hester Weeks and all of her children except Betsy Ann Raynor. At the time of executing said deed, Susan Catherine Williford, Phœbe Williford and Mary J. Jones were married women, they were not privily examined touching their execution of the deed. Minta Tew was a widow and more than twenty-one years of age. The jury found upon the issues submitted to them that Martha Weeks and Hester C. Weeks were also minors at the time of executing said deed. It was admitted that the plaintiff Sampson Weeks was a minor at the time he signed said deed. This deed was probated and registered upon the oath and examination of the subscribing witnesses thereto. There was evidence tending to show that the defendants claimed portions of said land under Brittain A. Edwards. The complaint does not set out what portions of said land were claimed by the several defendants nor does their answer throw any light upon this question. Much confusion grows out of the indefinite allegations in the pleadings. The complaint should have set out in full the tracts of land of which the several defendants were in possession. We are not sure that in the confused condition in which this record is sent to us, we have been able to fully understand and pass upon the large number of exceptions. As the case must be sent back for a new trial, we think, upon the pleadings being properly amended, many of the exceptions now in the record will not again be presented. For the purpose of deciding such questions as are fairly presented, we understand the condition of the title to be as follows:

The land in controversy belonged to Hester Weeks for life, with remainder to her eight children, by virtue of the will of Richard Warren as construed by the Court in partition proceedings. On June 1, 1863, Hester Weeks and seven of her eight children executed a deed for said land to Brittain A. Edwards, one daughter, Betsy Ann Raynor, not joining therein. At the time of the execution of this deed three of her daughters were married women, and as to them, no privy examination being taken, the deed is void. Two of the daughters were minors; one daughter, Minta Tew, a widow, more than twenty-one years of age. Her interest therefore passed under the deed and need not be considered. The plaintiff Sampson Weeks was a minor. The three undivided shares of the married women are eliminated, the deed being, as to them, void.

It appears from the record that Hester C. Weeks has since the date of the deed intermarried with Asher Mc-Cullen; her age at the time of her marriage does not appear. Martha Weeks is still a *feme sole*. Upon these facts Brittain A. Edwards took the life-estate of Hester Weeks and the one-eighth undivided interest of Minta M. Tew. As to the married women the deed was void. In respect to the shares of Sampson Weeks, Martha Weeks and Hester C. McCullen, the deed was voidable upon their arriving at full age. Hester Weeks, the life-tenant, died July 10, 1896. On the first day of June, 1899, all of the living children, together with the heirs of Susan Williford, deceased, executed a deed conveying the land to plaintiff Sampson Weeks. We find in said deed the following language: "And the parties of the first part do hereby disaffirm and repudiate a certain paper-writing, purporting to be a conveyance of a portion of the land described in said will to one Brittain Edwards, dated June 1, 1863, and registered in Book 35, p. 398, in the registry of Sampson County."

The plaintiff testified that he was thirty-five years old
at the date of the deed made to the defendant J. T. Wil-
kins, October 1, 1891. He was asked if he knew about
that and other trades in regard to the land and whether
he ever objected or warned purchasers. These questions
were asked with a view to showing that plaintiff's disaffirm-
ance of the deed of 1863 to Edwards was not in a reasonable
time and with a due regard to the rights of purchasers. The
Court intimated that it would hold that mere silence on
the part of those in remainder during the continuance of
the life-estate did not amount to an affirmance. The plain-
tiff was asked if he knew of any acts done on the land in the
nature of waste. He replied that he thought McPhail cut
some saw-mill logs and that he hauled some of these logs
by team, and that Daughtry cleared some of the land, but
that clearing up the land improved it. That he never ob-
jected to such acts. The defendants contended that the
deed from the children of Hester Weeks to the plaintiff was
void as to two of them upon the ground of *fraud in the
factum.* His Honor ruled that, upon all of the testimony,
there was no evidence, competent to be considered by the
jury, to sustain this allegation, and we concur with him
therein. The only question which we are unable to decide
from this record is presented by his Honor's instruction, as
follows: "As to the share of Sampson M. Weeks, the plain-
tiff, it being admitted that he was not twenty-one years old
at the time he signed said deed, the plaintiff's right to re-
cover that share depends upon his affirmance of said deed
after becoming of full age. If the plaintiff, by acts, conduct
or words, affirmed or ratified said deed after becoming of
full age, then of course he cannot recover; but mere silence
on the part of a remainderman, unaccompanied by acts or
words tending to show affirmance during the continuance of
a life-estate will not of itself amount to an affirmance; and

failure to bring suit against parties in possession during the continuance of a life-estate is not an affirmance, and the Court charges you that a delay of less than three years, as in this case, after the termination of the life-estate unaccompanied by acts, conduct or words, is not an affirmance. * * * An act of disaffirmance must be clear, positive and unequivocal, and must indicate clearly their intention to disaffirm and repudiate said deed. The commencement of an action to recover the land, as in this case, is such an act of disaffirmance, and the subsequent conveyance of the land described in the original deed, with knowledge of its purpose and effect, is likewise such an act of disaffirmance."

We take it to be well-settled in this State that the deed of an infant, operating as it does under our registration laws by transmutation of possession, is voidable and not void. *Hogan v. Strayhorn,* 65 N. C., 279; *McCormic v. Leggett,* 53 N. C., 425; *Ward v. Anderson,* 111 N. C., 115; *Cox v. McGowan,* 116 N. C., 131; Kent Com., 236; 1 Devlin on Deeds, 86. We do not find in the record any evidence of acts on the part of Sampson Weeks amounting to an affirmance, and his Honor would have been justified in so saying to the jury. The institution of this action is a clear disaffirmance, as his Honor told the jury. The defendants, however, asked the Court to instruct the jury that such disaffirmance must be within a reasonable time after the plaintiff reached his majority. He was of the opinion, and so instructed the jury, that in view of the existence of the outstanding life-estate of Hester Weeks, the action brought within three years after her death was within the time prescribed by law. The defendants excepted, and this exception presents the question which must be decided by us.

This Court has not, so far as the brief and argument of

counsel and our own investigation show, decided the ques-
tion as to when an infant after arriving at his majority must
disaffirm his deed. The only case approaching it is *Dewey
v. Burbank,* 77 N. C., 260, in which it is said that after his
reaching his majority he may avoid or confirm it, and that
continuing to reside on the land and paying a part of the
purchase-money (he being in that case the purchaser)
amounts to an election to ratify. The author of Devlin on
Deeds, Vol. I, section 91, after discussing the authorities
says: "The most reasonable rule seems to be that the right
of disaffirmance should be exercised within a reasonable
time after the infant attains his majority, or else his neg-
lect to avail himself of this privilege should be deemed an
acquiescence and affirmation on his part of his conveyance.
The law considers his contract a voidable one on account of
its tender solicitude for his rights and the fear that he may
be imposed upon in his bargain. But he is certainly af-
forded ample protection by allowing him a reasonable time
after he reaches his majority to determine whether he will
abide by his conveyance executed while he was a minor, or
will disaffirm it. And it is no more than just and reasonable
that if he silently acquiesces in his deed and makes no effort
to express his dissatisfaction with his act, he should, after
the lapse of a reasonable time, dependent upon circum-
stances, be considered as fully ratifying it." We think
this is a just and reasonable rule. It is sustained by a
large number of well-considered cases. *Cline v. Bebee,*
6 Conn., 494, in which *Hosmer, C. J.,* says: "A ratification
of the contract has often been inferred from the silence of
the infant after his arrival at full age, coupled with his
retaining possession of the consideration or availing himself
in any manner of his conveyance. \* \* \* The omission
to disaffirm a contract within a reasonable time has been
held sufficient evidence of a ratification." *Bigelow v. Kenny,*

3 Vt., 353, 21 Am. Dec., 589; *Searcy v. Hunter,* 81 Tex., 644, 26 Am. Rep., 837.   In *Blankenship v. Stout,* 25 Ill., 132, it is held that a conveyance of real estate by an infant must be disaffirmed within three years after his arrival of full age; *Caton, C. J.,* saying: "It is of the greatest import- ance that the common assurances of the country be rendered as certain as possible.   Purchasers should be able to know, after ascertaining the facts, whether they can purchase a good title or not.   \* \* \*   This end is essentially pro- moted by fixing a definite limit within which a conveyance made by an infant shall be repudiated after he attains his majority.   Although the tenth section of the statute   \* \* does not in terms apply to such cases, yet we are dis- posed to adopt the limitation there prescribed for the bring- ing of an action by an infant after he attains his majority, as a reasonable time within which he should repudiate a conveyance of real estate executed by him while an infant." Tyler on Infancy, 70.   In *Bigelow v. Kinney, supra,* it was held that disaffirmance eleven years after majority was not within a reasonable time. *Drake v. Ramsey,* 5 Ohio, 252.

While we have no statute fixing the time within which an infant is required to disaffirm his conveyance, we think that, upon the reason of the thing and in consonance with the policy of the law which seeks to quiet titles, and en- courage improvement of real estate, the infant should exercise his election within a reasonable time.   The statute gives him three years after arrival at majority within which to bring his action against a disseisor.   It seems to us that the same time, by analogy, should be fixed as the period within which he should determine whether he will disaffirm his deed.

But it is said that Mrs. Hester Weeks owned the life- estate, and that pending such estate he had no right of action to sue for the possession of the land.   We do not

think this material. His right to disaffirm his deed was entirely independent of his right to the possession of the land. He could easily have disaffirmed by returning the purchase-money or by some other unequivocal act which would have put innocent purchasers on notice. He could have brought his action to remove a cloud from his title under the Act of 1893, chapter 6. He was, according to his testimony, thirty-four years of age in 1894, and therefore reached his majority in 1879. At the time of the institution of this action he was thirty-nine years of age. He should, we think, have disaffirmed his deed within three years after he arrived at his majority.

The record before us illustrates the injustice which may be done by permitting an infant to remain quiescent for an unlimited time before doing some act which puts innocent purchasers on notice of a defect in their title. This land has been divided into five parcels and as many persons have purchased, paid for, and it seems some of them, with the knowledge of the plaintiff, have cleared and improved it. Eighteen years after his majority the plaintiff for a nominal consideration buys the interests of his brothers and sisters and brings this action—thus disturbing the rights of innocent purchasers and recovering not only the land but the rents and profits in excess of the amount paid by him for it. A stronger illustration of the wisdom of the law which seeks to quiet titles can hardly be found. His Honor should have charged the jury that the plaintiff Sampson Weeks could not recover in respect to his one-eighth undivided interest.

There is no evidence in the record in regard to the age of Martha Weeks. Her conveyance to Sampson is a clear disaffirmance. Whether it was made within the three years after reaching her majority we are unable to see. It does not appear when Hester Weeks was born or when she mar-

ried.    Whether her disaffirmance is in time will depend upon
these facts.    If she became covert before reaching her ma-
jority she is not barred of her right.

The record contains a number of admissions which should
be incorporated in the judgment.    As a new trial must be
had, we think that the complaint should be reformed so as
to contain "a plain and concise statement of the facts con-
stituting the cause of action," and the defendants be per-
mitted to answer.    It would seem that in view of the num-
ber of parties and interests involved, and the complicated
questions of fact to be settled, a reference would expedite
the final determination of the controversy.

We have not noted and decided many of the exceptions
because upon a new trial they may not and should not
arise.    There seems to be no doubt that the title vested in
Mrs. Weeks for life remainder to her children, and that
all of the defendants claim under them through Brittain
Edwards.    It seems equally clear that the defendants own
the share of Minta M. Tew, and, under our decision, of
Sampson Weeks, and that the plaintiff owns the shares of
Betsy Raynor and the married sisters who signed the Ed-
wards deed, but of whom no privy examination was had.
This leaves the shares of Martha Weeks and Hester Mc-
Cullen open for adjustment upon the facts as they may be
shown, according to the principles we have attempted to
lay down.    We think that the judgment against the defend-
ant for rents and profits should be reversed.    The facts
are not found upon which the amount of their liability
depends.    The case, it would seem, should go to a referee
to settle these questions.    When the rights of the parties
are ascertained a decree should be so drawn that it will
quiet the title.    *Weeks v. McPhail,* 128 N. C., 131.    Let
this be certified to the Superior Court of Sampson.

Error.