PERL JACKSON AND WIFE, NANCY LEE JACKSON,
v. D. E. AND JAMES R. BEARD.

(Filed 26 April, 1913.)

1. **Deeds and Conveyances—Married Women—Separate Examination—Joinder of Husband—Interpretation of Statutes—Constitutional Law.**

    Revisal, sec. 952, requiring the privy examination of a married woman, separate and apart from her husband, etc., to her conveyances of realty, is constitutional and valid (Art. X, sec. 6) ; and unless the formalities of this statute are complied with the deed of the married woman is absolutely void.

2. **Deeds and Conveyances — Married Women — Satutory Requirements—Joinder of Husband—Pares Initiate—Valuable Rights—Infants—Voidable Contracts—Ratification.**

    After a child of the marriage has been born alive and capable of inheriting, the husband is tenant by curtesy initiate in his wife's lands, and as such has a valuable right; the requirement of the statute, Revisal, sec. 952, where the wife's lands are conveyed, are of a contractual nature on his part; and hence when the husband, being a minor, joins in the deed to lands of his wife, the conveyance is voidable, subject to his affirmance or ratification when he becomes of age; and where the deed has been disapproved in apt time by him, the conveyance, requiring his valid or statutory consent, is void.

3. **Deeds and Conveyances — Married Women — Statutory Requirements—Husband's Estate—Interpretation of Statutes—Pari Materia.**

    Upon construing the Revisal, sec. 952, as to the contractual nature of the husband in joining in the wife's conveyance of land, and as to his parting with a valuable interest therein when issue of the marriage has been born alive capable of inheriting, other sections of the Revisal should be considered, to wit, section 2109-2111, regarding him as a freeholder, which estate may be lost by decree of divorce, in certain cases; that because of this interest in his wife's land he must become a party to her action concerning her title thereto (Revisal, sec. 2102). Nor does section 2108 affect this construction, its provisions relating to contracts between husband and wife, and not to such as made between them and third parties.

    CLARK, C. J., dissenting; BROWN, J., concurring in the dissenting opinion.

JACKSON *v.* BEARD.

APPEAL by plaintiffs from *Peebles, J.,* at April Term, 1912, of CUMBERLAND.

Civil action to set aside certain deeds and to recover one undivided seventh of a tract of land.

On the hearing it was properly established that on 21 November, 1907, Nancy Lee Jackson, *feme* plaintiff, was the owner of one undivided seventh of this tract of land in controversy, the same having descended to her from her father, John C. Beard, and on said day, for a small consideration, executed a paper-writing purporting to be a valid deed of conveyance to James R. Beard, one of defendants, and on 6 December, 1907. the said grantee conveyed the same to his brother and codefendant, D. E. Beard. That the consideration for said deed from Nancy Lee Jackson was alleged to be only $18, and admitted by defendants to have been only $35. That Perl Jackson, husband of Nancy Lee Jackson, joined in the execution of the conveyance of 29 November, and at the time was under the age of 21. That immediately after his becoming of age he and his wife, as coplaintiffs, joined in the present suit to set aside the deed and recover the land, and that said Perl Jackson has "done nothing since arriving at full age to ratify or confirm said deed." The court being of opinion that the infancy of the husband did not in any way affect the validity of the deed of himself and wife, so instructed the jury. There was verdict and judgment for defendant, and plaintiffs excepted and appealed.

*V. C. Bullard for plaintiff.*
*H. L. Cook for defendant.*

HOKE, J. Our statute, Revisal, sec. 952, provides that: "Every conveyance, power of attorney, or other instrument affecting the estate, right, or title of any married woman in lands, tenements, hereditaments, must be executed by such married woman and her husband, and due proof or acknowledgment thereof must be made as to the husband and due acknowledgment thereof must be made by the wife, and her private examination touching her voluntary assent to such instrument shall be taken separate and apart from her husband, and such acknowledgment

or proof as to the execution by the husband, and such acknowl-
edgment by the wife and her private examination shall be taken
and certified · as provided by law." This section has been re-
peatedly held a constitutional and valid enactment, and author-
ity with us is equally decisive that unless the formalities estab-
lished by this statute are complied with, the deed of a married
woman is absolutely void. *Council v. Pridgen,* 153 N. C., 443;
*Bank v. Benbow,* 150 N. C., 781; *Ball v. Paquin,* 140 N. C.,
83; *Smith v. Bruton,* 137 N. C., '79; *Ferguson v. Kinsland,*
93 N. C., 337; *Southerland v. Hunter,* 93 N. C., 310.

In *Council v. Pridgen,* the accepted doctrine on this subject
is stated as follows: "Article X, sec. 6, of our Constitution,
requiring that ·a married woman conveying her separate real
estate shall have the 'written assent of her husband,' the statute
law, now embodied in Revisal, sec. 952, provides the manner in
which the assent of the husband must be obtained, to wit, that
the deed 'must be executed by such married woman and her
husband and due proof or acknowledgment thereof must be
made by the wife and her privy examination taken,' etc.; and
thus construed, the statutes are constitutional and valid."

"In .order to convey a married woman's separate real estate
or fix a charge upon it, her privy examination is required, and
the husband must join in the deed."

                  .     .     .    .     .     .    .     .     .    .    .

"A deed executed by a married woman to her separate real
property, the name of the husband not appearing in· the body
of the deed or his signature thereto, proved on oath of a sub-
scribing witness and registered on such probate, without her
privy examination, is inoperative, and the written assent of
her husband indorsed on the deed does not meet with the con-
stitutional and statutory requirements necessary for her to
make a valid conveyance."

It will be noted that the essential requirements to a valid
deed by the *feme covert* are that her husband must join in the
execution of the deed, and the privy examination of the wife
must be taken, and this act of the husband being contractual
in its nature both by the express terms of our statutory law and

in its operative effect, we are of opinion that it is subject to the general principle prevailing here and elsewhere, that the deeds and contracts of an infant, except for necessaries, etc., may be avoided by him in a reasonable time after coming of age. *Weeks v. Wilkins,* 134 N. C., 516; *McCarty v. Woodstock Iron Co.,* 92 Ala., 463; *s. c.,* 12 L. R. A., 138; *Miles v. Lingerman,* 24 Ind., 385; 22 Cyc., p. 546. The purpose of our statute in making these requirements as to the deeds of *feme covert* is stated by *Chief Justice Smith* in *Ferguson v. Kinsland, supra,* as follows: "The requirement that the husband should execute the same deed with the wife was to afford her his protection against the wiles and insidious arts of others, while her separate and private examination was to secure her against coercion and undue influence from him." And *Connor, J.,* in *Ball v. Paquin, supra,* says: "For the purpose of throwing around her the protection of her husband's counsel and advice, the Legislature declared that with certain exceptions she could not contract without the written consent of her husband."

The basic reason for permitting infants to avoid these deeds and contracts is that until they are 21 they are not supposed to have the mental capacity to make them, and if the reasons for such enactment be correctly stated by these eminent jurists, the principle should apply, we think, when in order to its validity the husband is required to join in the execution of the deed for his wife's property. If the husband were shown to be a lunatic, and this fact were known to the purchaser, it would hardly be contended that his assent to his wife's deed would stand; and the same reason for avoiding the deed in the one case appears in the other, to wit, the mental incapacity to make a deed. The question has been directly presented to the Supreme Court of Tennessee in *Barker v. Wilson,* 51 Tenn., 268, and it was there held: "That a bargain and sale made by an infant husband jointly with a wife of full age, of the real estate of the wife, is voidable at the election of the husband"; and in *Craig v. Van Bebber,* 100 Mo., 584, the Court, treating of a similar question, said: "Now, it is true that in the cases cited the deeds were worthless from the beginning, whilst here the deed is voidable

only; but we do not see that this makes any difference. When the deed is disaffirmed because of the minority of the wife, it becomes worthless as to the husband. As said in the case last cited, the title can only be transferred by an indivisible integer, or not at all. So, too, if the deed be avoided as to the wife, it is avoided as to the husband. It must stand or fall as a whole."

And our own Court is not without expression on the subject. The same article of our Constitution which (in section 6) enables a married woman to convey her property with the written assent of her husband, in section 8 provides that no deed by the owner of a homestead shall be valid without the "voluntary signature and assent of the wife, signified on her private examination, according to law." There is nothing here said as to whether the wife shall be over or under 21 years old, and in *Ritch v. Oates,* 122 N. C., at page 633, in discussing the validity of a deed by the husband and his wife, who had joined in the deed, being privily examined and was under age at the time of its execution, the present *Chief Justice* said: "She, being under age, her assent, though given with privy examination, is invalid, but the interest of the husband, a mere right to call for the title, was not such an interest as to require her legal assent to the conveyance to bar the husband's assertion of a homestead therein." As the excerpt shows, the case was decided on other grounds, to wit, that the husband's interest did not amount to a homestead; but the view of the learned judge as to the validity of a deed, under section 8 of the Constitution, by an infant wife, seems to be in full accord with the Tennessee decision. On reason and authority, therefore, we are of opinion that it was open to the husband to disaffirm his consent on arrival at full age, and that, having done so, the deed must be held void as not conforming to our statute on the subject.

It is earnestly urged that the act of the husband in consenting to his wife's deed has no operative or contractual effect, as he has no longer any interest in his wife's land; but this, we think, cannot be maintained. It is true that under the terms of our Constitution we have held that a wife may devise her land and thus defeat any and all interest of the husband therein (*Tiddy v. Graves,* 126 N. C., 620); but unless this has been

done, the estate and interest of her husband, as tenant by curtesy after issue born alive, is still regarded as existent under our law, recognized both in our statutes and decisions as a valuable interest. In Revisal, sec. 1730, "where the interest of one who has entered land dies the estate is recognized." It may be lost by decree of divorce in certain cases. Revisal, 2109-2111. By virtue of such estate he is regarded as a freeholder. *Thompson v. Wiggins,* 109 N. C., 508.

In *McGluminy v. Miller,* 90 N. C., 215, it was held: "That a husband, tenant by curtesy, has an interest in his wife's land and is a necessary party to a suit concerning it, and if he refuses to become a coplaintiff in an action by the wife to assert her right to the property, he must be made defendant." Pell's Revisal and note to section 2102.

In *Tiddy v. Graves, supra,* there are some expressions in the opinion which seem to favor defendant's position, but the decision properly rests upon the express provision of the Constitution that the wife may devise her lands, and on the question presented here the expressions referred to may not be allowed to reverse the entire current of authority to the effect that a tenancy by the curtesy initiate must still be considered an existent interest. As to section 2108 of the Revisal, a provision much relied upon by defendant, it clearly refers throughout to contracts between the husband and the wife, and does not and was not intended to affect the contracts between the husband and the wife and third parties. These, as we have seen, are chiefly controlled by section 952 of the law as heretofore cited.

We have not referred to the fact that the first grantee, a brother of the *feme covert,* had conveyed the property to another brother. It does not appear whether the second grantee did or did not have notice, but this does not seem to affect the application of the principle that an infant may avoid his deed within a reasonable time after coming of age. 22 Cyc., p. 551.

For the reasons stated, we hold there was error in the proceedings below which entitles plaintiff to a new trial of the cause.

New trial.

JACKSON v. BEARD.

CLARK, C. J., dissenting: The requirements of Revisal, 952, as to the conveyance of real estate by a married woman have been in every particular scrupulously complied with. The deed was executed by her and her husband with due proof thereof as to both the husband and the wife, and her private examination duly certified. The first cause of action alleging fraud or undue influence is negatived by the jury, and there is no appeal on that point.

The plaintiff seeks to set aside the deed because he insists that the court should write into the statute words that are not placed therein by the Legislature and which are not in the Constitution, to wit, "the husband being 21 years of age." He insists that these words are implied because a conveyance of realty can only be made by one 21 years of age. But "the written assent of the husband," which is all that is required by the Constitution and to which the Legislature cannot add, and has not sought to add, is not a conveyance.

The husband had nothing to convey. He has no interest in his wife's estate. The Constitution expressly prohibits his having any. It says (Const., Art. X, sec. 6) that "The real and personal property of any female in this State . . . shall be and remain the *sole and separate* property of such female . . . and may be devised and bequeathed and, with the written assent of her husband, may be *conveyed* by her *as if she were unmarried.*" If the property of a married woman "shall be and *remain* her *sole and separate* property, *as if she were unmarried,*" her husband certainly cannot have any interest therein during her lifetime, nor acquire any at her death, unless by her will or dying intestate he succeeds thereto under the general statute of distribution and descent. Such "possibility of inheritance" is not an "interest in" her property. He is forbidden the latter by the Constitution. Her children or her heirs at law have exactly the same possibility of succeeding to her property by devise, or in case of intestacy. But that does not confer on them any interest in her estate which requires them to join in any conveyance of her property.

This written assent does not invest him with any interest in the property, but is merely a "veto power," and there is nothing

in the Constitution or in the statute which requires that the husband should be 21 years of age. To so hold is for the Court to write into the Constitution words which are not placed there, and which the Legislature has not attempted to place in the statute, and which would have been unconstitutional if it had done so, by requiring an *addition* to the simple requirement of the Constitution. That simply gives the husband a veto power. It requires merely for the "written assent" that he shall be her "husband," and nothing more.

It is true that Revisal, 952, does require that the husband must join in the deed, and proof of his execution must be made. If this meant that he must convey, it is an additional requirement, negativing the guarantee given by the Constitution that his "written assent" shall be the only clog upon the wife's right to convey her property as if she had "remained unmarried." It can only be construed that the law required his formal acknowledgment to the deed, not as a conveyance (for he has nothing to convey), but simply as a method of authenticating his signature; and being such, there is no necessity of his being 21 years of age. If he is old enough to be legally her "husband," he is old enough under the Constitution to withhold his assent, or to give it.

The privy examination which is still required of women by the statute as to conveyances of her own property has been sustained by the Court "upon the ground solely that it is not an additional clog upon her power of conveyance (because the Legislature could not add additional requirements), but because it was merely a means of authenticating her signature, and is therefore allowable." *Rea v. Rea,* 156 N. C., 532; *Douglas, J.,* in *Weathers v. Borders,* 124 N. C., 621.

After the sweeping provision of the Constitution which emancipated women as to their property rights, retaining only · the requirement of the written assent of the husband as to conveyances of realty, that provision came to be construed by judges who were imbued with the previous learning as to the status of married women and whose decisions, to say the least, were not in accordance with the clear meaning of the Constitution. Some of these decisions have been overruled since and

others have been sustained by the majority of the Court solely upon the ground that it "has been so decided." *Connor, J., Ball v. Paquin,* 140 N. C., 90, 94. Many of these have since been cured by repeated acts of the Legislature conforming the law more closely to the terms of the Constitution. But up to this time there has been no decision of the Court that has written into the Constitution, or the statute, the words requiring the husband to be of age when he gives or withholds his written assent.

But it is urged that it is in the eternal order of things that before a man can make himself responsible, or do any act, he must be 21 years of age. That is true in our law, as to conveyances and contracts, but the "written assent" of her husband required by the Constitution is neither a conveyance nor a contract. He has nothing to convey, for he has no interest in his wife's land; nor is it a contract, for there is no consideration to him from the grantee. There is nothing magical in being "21 years of age." For the purposes of contracts and conveying and of suffrage there must be some arbitrary age substituted for proof of discretion which otherwise would be required for each conveyance or contract. This is purely arbitrary, and varies in different countries. In many countries the age for suffrage is 25, and in some it is 30. In Russia, and indeed in most countries, a monarch who is a minor becomes of legal age, and is invested with the highest powers of government, at 16. We know that in this country the Governor of one of our territories was under 21 years of age when he succeeded to that position under the authority of the President., *U. S. v. Bixby,* 10 Bissell (U. S.), 520. In that case there is a full discussion of the subject by *Judge Gresham,* who points out that notaries public are not required to be 21 years of age except in those few States where this is specially required by statute. He says: "While at common law persons are not admitted to full enjoyment of civil and political rights until they have attained the age of 21 years, yet infants are capable of executing mere powers and, as agents, of making binding contracts for others. In England they are allowed to hold the

office of park keeper, forester, jailer, and mayor of a town; and in both England and this country they are capable of holding and discharging the duties of such mere ministerial offices as call for the exercise of skill and diligence only." He then points out that Stevens S. Mason at 19 years of age was appointed Secretary of the Territory of Michigan by President Jackson in 1831, and succeeded to the duties of Governor before he was 21, which he discharged with "vigor and wisdom, that vindicated the propriety of his appointment." We know that LaFayette was a major general in the American Army at 19, in the command of four brigades, the duties of which position he discharged with ability. We need not multiply other well-known instances which are numerous. It is sufficient to say that neither the Constitution, nor the statute, nor the eternal fitness of things requires the Court to write into the Constitution an additional requirement that a married woman cannot convey her realty "as if she remained single" unless her husband is "21 years of age." It may be that the courts could write a better Constitution in some respects than the Convention with the approval of the people have done, but that duty was not committed to the courts, and we should observe the plain requirements of the Constitution, adding nothing thereto and taking nothing therefrom.

That the husband has no interest in the wife's estate has been again and again held by this Court, but we need only cite the lucid remarks of *Merrimon, C. J.,* in *Walker v. Long,* 109 N. C., 510, in which he says: "The Constitution, Art. X, sec. 6, has wrought very material and far-reaching changes as to the rights respectively of husband and wife in respect to her property, both real and personal, and enlarged her personality and power in respect to and control over her property. It provides that 'the real and personal property of any female in this State acquired before marriage, and all property, real and personal, to which she may after marriage become in any manner entitled, *shall be and remain the sole and separate estate and property of such female,* and shall not be liable for any debts, liabilities, or engagements of her husband, and *may be devised and bequeathed* and with the written assent of her hus-

band conveyed by her *as if she were unmarried.* This provision is very broad, comprehensive, and thorough in its terms, meaning, and purpose, and *plainly gives and secures to the wife the complete ownership and control of her property as if she were unmarried, except in the single instance of conveying it.* She must *convey* with the assent of her husband. It clearly excludes the ownership of the husband as such, and *sweeps away* the *common-law right of estate* which he might at one time have had as *tenant by the curtesy initiate.* The strong and exclusive language of the clause above recited is that the property 'shall be and remain the sole and separate property of such female.' The husband shall be, *not* tenant by the curtesy initiate, but tenant by curtesy *after the death of his wife,* in case *she die intestate."* The Court in *Tiddy v. Graves,* 126 N. C., 622, cited *verbatim* and indorsed the above quotation, and negatived the argument which was insisted on, in that case, that the curtesy of the husband in the whole of the wife's realty is the correlative of the dower of the wife in one-third of the husband's realty, and hence, that if the Legislature can confer dower, it can retain curtesy. The Court referred to the Constitution as conclusive of the absolute and unlimited ownership of the wife in her property during her lifetime, and vests the power in the Legislature to confer both dower or curtesy, *after the death* of a party, upon the ground that no one has a natural right to control his property after death, and that the disposition thereof, whether by will or by inheritance, is purely statutory.

The decision in *Tiddy v. Graves,* 126 N. C., 620, that the tenancy by the curtesy initiate as an interest in the wife's property has been destroyed by the Constitution and is now only a personal right to associate with his wife, and the possibility of inheriting (like her heirs at law) if she dies intestate, is not only a summary of all previous decisions, but it is the last discussion of the subject. Indeed, it has never been questioned since, but has been cited and approved, on rehearing, 127 N. C., 502 (though the result was changed in that case on the ground that it did not appear that the marriage occurred since 1868); *Ex Parte Watts,* 130 N. C., 242; *Hallyburton v. Slagle, ib.,* 482; *s. c.* (on rehearing), 132 N. C., 948; *S. v. Jones, ib.,*

1047; *Watts v. Griffin* (*Walker, J.*), 137 N. C., 579; *Eames v. Armstrong,* 146 N. C., 6 (where *Connor, J.,* says, "That her husband had 'no estate or interest' in the land, notwithstanding birth of issue, is settled"); *Richardson v. Richardson* (*Walker, J.*), 150 N. C., 553. The husband, therefore, had nothing to convey, and there is no ground to require him to be "of age." He could marry under age, and his veto power is given by virtue of marriage, and not by virtue of his age.

Long before *Walker v. Long,* this Court, in *Manning v. Manning,* 79 N. C., 293 and 301, in a strong and lucid opinion by *Bynum, J.,* had affirmed the absolute ownership and control of her property by a married woman, and held that the husband had no interest therein of any kind whatever.

In three cases, filed on the same day and written by three different judges, *Thompson v. Wiggins,* 109 N. C., 508; *Walker v. Long, ib.,* 511; and *Jones v. Coffey, ib.,* 515, all three speaking for a unanimous Court, it was held that while a husband may still be called a "tenant by the curtesy initiate" and deemed a freeholder for the purposes of sitting on a jury, he has in fact *no estate or interest* whatever in his wife's property, and was entitled to no more than the right of ingress and egress, and that she could, as the statute provides, sue for the possession of her property and for rents and damages thereto without joining her husband. There are numerous other decisions to the above effect.

It being clear upon the face of the Constitution and the above cited decisions that the husband has "no estate or interest" in his wife's property which he can convey or refuse to convey, there is nothing that authorizes judicial legislation to read into the Constitution, or the statute, additional words which will forbid a wife to convey her realty, when she has the written assent of her husband, without the additional clog added by the courts, "provided such husband is 21 years of age." This is not required by the Constitution, nor by the statute, nor by the "reason of the thing," which gives a husband the veto power *ex virtute officii,* without any reference to his age.

No opinion can be found which denies the power of a wife to convey her realty unless her husband is of age. *McGlennery*

JACKSON *v.* BEARD.

*v. Miller,* 90 N. C., 216, which is relied upon by the plaintiff, states in the face of the opinion that "the marriage took place in 1850; the wife was seized in fee of the lands at the time of the marriage, and there were children of the marriage born alive. *Hence* the husband has a life estate in the land as tenant by the *curtesy initiate."* The opinion is by *Merrimon, J.,* who wrote *Walker v. Long,* 109 N. C., 510, and there said that the Constitution *"sweeps away* the common-law right of estate which he might at one time have had as tenant by the curtesy initiate." The case of *Barker v. Wilson,* 51 Tenn., 268, speaks of a "bargain and sale" made by an infant husband jointly with a wife of full age, and is under a Constitution totally different from ours. Indeed, Revisal, 2102, especially restricts the tenancy by the curtesy to cases "after the death of the wife *intestate."* The absolute power of the wife to devise her property is set out in the Constitution and in Revisal, 2098, which could not be the case if the husband had any vested interest in her realty. *Walker, J., Watts v. Griffin,* 137 N. C., 572. This is further recognized by Revisal, 2116 and 2117, which make the deed of the wife of her property valid if the husband is an idiot or lunatic or has abandoned her, without any assent of the husband, which could not be the case if he had any interest therein. See numerous cases cited in Pell's Revisal under those sections, holding them constitutional.

It may be noted that in all the more recent State constitutions the requirement of the "written assent" of the husband has been dispensed with, as has also been the case in England and in Australia and Canada and other English-speaking countries. The requirement of a privy examination of the wife to a deed was abolished in England some forty years ago, and also this has been followed in Australia and Canada and in all the States of this Union, including all the States adjoining us— Virginia, South Carolina, Georgia, and Tennessee—except in North Carolina and seven others. There can therefore be no protection, and only an unnecessary clog, in requiring an addition to the "written assent" of the husband which is not set out in our Constitution nor in any statute.

BROWN, J., concurs in the opinion of CLARK, C. J.