## RICHMOND CEDAR WORKS v. KRAMER BROS. & CO. et al.

(District Court, E. D. North Carolina.   July 10, 1920.)

**1. Partition ⬅16—Plaintiff not required to go behind common source of title.**

While complainant in a suit for partition, in which his title is disputed, must recover on the strength of his own title, it is sufficient for him to show a right to recover against the defendant, and when it appears that both derive title from a common source he need not go behind that source.

**2. Tenancy in common ⬅15(4)—Twenty years necessary to adverse possession.**

Under the law of North Carolina an adverse possession of 20 years by one tenant in common is necessary to bar the entry of his cotenant.

**3. Infants ⬅31(1)—Deed disaffirmed by another deed after reaching majority.**

Under the law of North Carolina a deed by an infant may be avoided or disaffirmed by the execution of another deed to the same land within 3 years after the infant reaches the age of 21 years, but not thereafter.

In Equity.   Suit by the Richmond Cedar Works against Kramer Bros. & Co. and W. E. Liverman.   Decree for complainant.

R. W. Winston, of Raleigh, N. C., and Thompson & Wilson, of Elizabeth City, N. C., for plaintiff.

Aydlett & Sawyer and W. A. Worth, all of Elizabeth City, N. C., and Mark Majette, of Columbia, N. C., for defendants.

CONNOR, District Judge.   Complainant alleges that it is the owner of an undivided interest, being $16/21$, defendant W. E. Liverman $5/21$, and defendants Kramer Bros. & Co. of the same interest in standing timber on the tract of land lying and being situate in Tyrrell county, N. C., containing about 600 acres; that defendants, Kramer Bros. & Co. have cut and removed a large portion of the timber from the land, for which they are liable to account.   Complainant prays for partition and allotment to them of their share of the land in severalty, and an accounting by them for the timber cut and removed therefrom.

Defendants deny the tenancy in common and aver that defendant Liverman is seized in severalty of the land and Kramer Bros. & Co. of the standing timber thereon.   The jurisdiction of the court is based upon diversity of citizenship.   The locus in quo is covered by the deeds under which both parties claim, as fixed by the evidence and indicated by the plat introduced in evidence marked Exhibit A.   It is conceded that title passed out of the state July 9, 1796, by the grant of a large body of land including the locus in quo to Josiah Collins.

Complainant claims title to a two-thirds undivided interest under a deed executed by J. W. Simmons and wife to W. R. Spruill and Frederick F. Jones, bearing date 24th of August, 1888, Book 36, p. 344, Tyrrell County registry.   The land is described as:

"A tract of land conveyed by S. S. Simmons, administrator of Daniel Bateman, to J. W. Simmons, by deed dated June 30, 1860 and recorded in the office

of the Registry of Deeds in Tyrrell county, Book 23, p. 124, reference being had to said deed for a more complete description of said land." (Tract X.)

The deed from S. S. Simmons to Daniel Bateman, corresponding in date to the call in the deed to J. W. Simmons, calls for a tract of land lying in said county—

"bounded on the west by Scuppernong river, on the south by Lake Phelps, east by Alligator river, north by Albermarle Sound, containing 500 acres, more or less, it being all the lands said Daniel Bateman owned in said bounds."

Recorded in Book 23, page 124, Registry of Tyrrell County.

Plaintiff introduced, for purpose of description and location, a deed from Joseph Bateman to Daniel Bateman, dated December 14, 1838, conveying a tract of land described by calls for Scuppernong river and other natural objects, which the evidence of surveyors and other witnesses fix as the same land covered by the deeds introduced by complainant. The location is not seriously contested, and is conceded by defendant W. E. Liverman upon his examination as a witness in the cause. Other deeds to J. W. Simmons, prior in date, are introduced, which appear to cover the land, but which are not of controlling import in this controversy. They all tend to show title in J. W. Simmons.

Complainant introduced a deed from W. R. Spruill and wife to T. H. Woodley, dated March 13, 1900, recorded in Book 47, page 111, registry of Tyrrell county. This deed conveys, among others:

"(10) a tract of land conveyed by S. S. Simmons, administrator of Daniel Bateman, to J. W. Simmons, dated June 30, 1860, registered in Book 23, page 124. The herein conveyed land being the same land conveyed in a deed made by J. W. Simmons and wife Amanda L. Simmons to W. R. Spruill and F. F. Jones, recorded in Book 36, page 344."

F. F. Jones died intestate, leaving as his only heir D. M. Jones, who on March 28, 1900, by deed recorded in Book 47, page 188, conveyed to T. H. Woodley his right, title, and interest in a tract of land described in the deed from W. R. Spruill and wife to Woodley, making specific reference to the deed from J. W. Simmons to Spruill and Jones. T. H. Woodley, on September 24, 1904, conveyed to complainant all of the right, title, and interest acquired by him under the deeds from Spruill and Jones to the land described in said deeds, to which specific reference is made. This deed is recorded on Book 52, page 131, registry of Tyrrell county. These deeds put in plaintiff the title to two-thirds undivided interest in the land in controversy.

For the purpose of showing that defendants claimed title under J. W. Simmons, and thus relying upon the rule of practice, estopping them for denying title in him, complainant introduced a deed from A. L. Simmons, Charles S. M. Simmons, Eulalia N. J. Newell and her husband, E. B. Newell, Durant W. Simmons, Dennis J. Simmons, Albert A. Simmons, Lula N. Simmons, and N. B. Simmons, describing themselves as the heirs at law of J. W. Simmons, conveying to defendant W. E. Liverman "all of their estate, right, title, and interest in and to that part or parcel of land situate in Columbia township, Tyrrell county, North Carolina, bounded as follows," etc., bearing date November 23, 1899, recorded in Book 47, page 27, Tyrrell registry.

The boundaries set forth, while not in all respects corresponding with the boundaries set forth in the deeds in complainant's chain of title, cover and include the same tract of land. This appears by reference to the oral evidence and the plat introduced (recorded Book 47, page 37, Registry of Tyrrell county). This is not seriously controverted. The allegation by complainant that two of the grantors in this deed were infants at the date of its execution and that, upon their arrival at full age, they disaffirmed their act and conveyed their interest to another party, who conveyed to complainant, will be dealt with hereafter.

It appears that W. E. Liverman, on March 15, 1904, conveyed to the Scuppernong Milling & Manufacturing Company the merchantable timber trees on a tract of land as described in a deed to W. E. Liverman from Charles S. Simmons and others, heirs at law of Joseph W. Simmons, deceased, by deed dated November 23, 1899, and recorded in the office of the register of deeds of Tyrrell county, N. C., Book 47, pages 37 and 38, etc. This deed also conveys all timber trees which may become merchantable at any time within 25 years from date thereof, with the usual easements, rights of way, etc., for cutting and removing the trees.

On March 10, 1910, the Scuppernong Milling & Manufacturing Company conveyed to defendant Kramer Bros. & Co. the timber trees, etc., conveyed by the deed from W. E. Liverman. In this condition of the record, it is manifest that complainant is seized of the land and timber, as tenants in common with defendants, in the proportion of two-thirds and one-third to each.

Defendants, however, make several contentions in opposition to this conclusion, which must be dealt with. Those relating to the paper title will be first disposed of. It will be noted that the land in controversy is valuable chiefly, if not entirely, for timber being swamp or pocosin land. As, with such lands in the section in which they are located, the boundaries are confused, by reason of the indefiniteness of the descriptions in deeds and other muniments of title. As shown by the recited consideration in the several deeds relating to them, their value, until recently, was inconsiderable. While there was considerable oral evidence, and, as usual in such cases, much uncertainty and more contradiction on the part of witnesses, several of whom were of great age and illiterate, I do not entertain any doubt that the deeds relied upon by both parties cover and include the lands in controversy. The testimony of defendant, W. E. Liverman, puts this question at rest.

[1] It is an elementary principle, recognized and enforced in numerous cases in the courts of this state, that while the plaintiff must recover upon the strength of his own title, it is sufficient for him to show a right to recover against the defendant, and whenever it appears that both derive title from a common source, he need not go behind that source. It is said:

"The rule is not strictly an estoppel, though often spoken of as such, but a rule of justice and convenience adopted by the courts to relieve the plaintiff from the necessity of going behind the common source. When the defendant can show a better title outstanding, and has acquired it, the rule ceases to apply." Sedgwick & Wait, Trial of Title, § 803, citing a North Carolina case.

It follows, therefore, that as both parties claim title under J. W. Simmons, the plaintiff is entitled to a decree, unless defendants show a superior outstanding title which they have acquired, or that they have a better title derived from J. W. Simmons, or those claiming under him, or that they have ousted plaintiff and acquired title by adverse possession for the statutory period.

Defendants introduced the record of a proceeding instituted by George W. Tarkenton, executor of S. S. Simmons, deceased, against J. W. Simmons and wife, April 1, 1889, in the superior court of Tyrrell county, in which it was alleged that S. S. Simmons died seized of a number of tracts of land, including the land in controversy; that J. W. Simmons was one of the heirs at law or devisees of said S. S. Simmons; that a sale of said land was required to make assets for the payment of the debts of said S. S. Simmons. The summons in said proceeding was served by publication, and a decree entered directing the sale of the lands, which sale was made and confirmed by the court and deed therefor executed to one T. W. Swain, the consideration being $10.60.

Passing several irregularities in this proceeding, it is manifest that the decree was ineffectual as to W. R. Spruill and F. F. Jones, to whom J. W. Simmons, on August 24, 1888, had conveyed two-thirds interest in the land. This deed was recorded in the proper office Tyrrell county, August 25, 1888, eight months prior to the date of the summons in the proceeding of Tarkenton, executor, against Simmons. Neither Spruill nor Jones were parties to the proceeding. While it may be that the decree, and deed made pursuant thereto, divested the title to J. W. Simmons to the one-third interest remaining in him, there is no attempt to connect defendants with the title acquired by Swain to this undivided interest.

[2] We are thus brought to a consideration of the contention made by defendants that, conceding the tenancy in common created, between complainant and W. E. Liverman, by the deeds hereinbefore recited, they have acquired title to the entire tract by an ouster of those under whom complainant claims, followed by adverse possession for twenty years. It will be noted that the deed from the heirs of J. W. Simmons to defendant W. E. Liverman bears date November 23, 1899, and the bill herein was filed February 3, 1917. Liverman does not claim that he began work on the land, *claiming under the deed*, until a short time after its execution. Such possession as he then took is therefore restricted in point of time to the date of filing the bill— 17 years, 2 months, and 10 days. It is well settled by the decided cases in this state, whatever may be held by other courts, that an adverse possession of 20 years by one tenant in common is essential to bar the entry of his cotenant. The rule is too firmly fixed in our jurisprudence to be regarded as open to debate. It is a rule of property. Lumber Co. v. Cedar Works, 168 N. C. 350, 84 S. E. 525, Ann. Cas. 1917B, 992, in which Mr. Justice Walker cites the numerous cases decided by that court.

Defendants, however, claim that the adverse possession of those under whom they claim began many years prior to the deed from the

heirs of J. W. Simmons to defendant W. E. Liverman, and has been at all times, open, notorious, continuous, and under a claim of right; that such possession "first commenced under S. S. Simmons" by the father of defendant W. E. Liverman. Witness A. W. West, referring to this use, says:

"He was cutting under S. S. Simmons, and he died not many years thereafter."

Anderson West says:

"I knew W. E. Liverman's father, and have known W. E. Liverman all my life. They went in there, cutting this timber, 32 years ago. I reckon they went in there under S. S. Simmons. S. S. Simmons lived within a mile of that place; boarded at Liverman's."

R. H. Spruill says:

"Liverman and his father both worked in the swamp. I knew Sam Simmons. He boarded at W. E. Liverman's while they worked in there, about 200 yards from this land. Simmons could see that Liverman was working there, unless he shut his eyes."

Z. T. Kemp says that the Livermans were in there working the swamp under S. S. Simmons more than 30 or 35 years ago, cutting juniper and pine. W. E. Liverman says:

"I first entered under a lease from S. S. Simmons in 1887. S. S. Simmons died in the spring of 1888. His son, J. W. Simmons, then came to see me, and we bargained and bought the swamp, paying him $25 purchase money, and he gave a bond for the title. I bargained to buy it from him. A deed was then drawn according to that bargain, but he died before it was signed. After he died, I got the deed from his heirs. He died about 1890 or 1895. J. W. Simmons went on the land 12 or 14 months after his father died."

Defendants introduced a deed, executed by J. W. Simmons to his father S. S. Simmons, bearing date November 8, 1880, recorded on Book 28, page 363, Tyrrell county registry, conveying:

"Any and all swamp land lying between the Alligator and Scuppernong rivers in Tyrrell county, and on the east side of Scuppernong river, and known as the western thicket and northwest fork, containing 5,000 acres, more or less."

If, as contended and is probable, this description included the locus in quo, it explains the testimony showing that defendant W. E. Liverman and his father were cutting the timber under S. S. Simmons, and excludes the contention of an adverse possession. S. S. Simmons, by his last will and testament, dated May 8, 1888, devised his entire real estate to his son, J. W. Simmons. It was admitted to probate June 13, 1888. W. E. Liverman says that J. W. Simmons "entered upon the land and made a contract with him to sell it" to said Liverman, but instead of executing the deed sold two-thirds interest to W. K. Spruill and F. F. Jones August 24, 1888. The alleged bond for title is not introduced, nor does it appear that it was recorded. Spruill and Jones were not affected by it. It appears from the evidence of J. C. Meekins that S. S. Simmons made this contract and deed before it was signed and the money returned to Liverman. If, as defendants aver, W. E. Liverman was at that time cutting timber from the land, and subjecting it to

other uses, claiming under, and not adverse to, J. W. Simmons, such conduct was not adverse to the rights of Simmons and his grantees. The character of such possession as he had was not changed, so as to affect the rights of the grantees of J. W. Simmons, until the execution of the deed by the heirs of Simmons, which was less than 20 years before the bill herein was filed. The deed from the heirs of J. W. Simmons created a cotenancy between Spruill and Jones and W. E. Liverman, which could only be destroyed by a deed or by an ouster followed by 20 years' adverse possession.

There was evidence of a sale of the land by the sheriff for delinquent taxes, and by the board of education; but defendants do not seriously contend that any rights were acquired by them under either sale.

The evidence in regard to the extent of cutting timber and other acts denoting possession by W. E. Liverman and Kramer Bros. & Co. subsequent to November 23, 1899, is indefinite and unsatisfactory, especially in regard to its continuity. It is necessarily so, because the land in controversy is a portion of a large body of swamp or timber land. The lines are indefinite and uncertain. If the cutting and other acts relied upon by defendant constituted an ouster and adverse possession, it is manifest that they did not cover the period required to ripen title in defendant as against their cotenants, the grantees of J. W. Simmons, and those in succession to his title. The latest expression of opinion by the Supreme Court of North Carolina upon the subject is found in a well-considered opinion by Mr. Justice Walker in Alexander v. Cedar Works, 177 N. C. 140, 98 S. E. 312.

Complainant bases its claim to the interests of Mamie B. Simmons and Albert A. Simmons, two of the children of J. W. Simmons, who undertook to convey their interest in the land to W. E. Liverman, to the averment that they were minors at the time they executed the deed, and that upon reaching the age of 21 years they disaffirmed their deed by executing a deed conveying their undivided interest which have vested in complainants.

The only evidence which I find in the record, respecting the alleged nonage of these two children of J. W. Simmons, is that of J. S. Swain, who was sent by W. E. Liverman to the residence of the children in South Carolina to obtain the deed. Swain says that their mother told him that "three of the children were under age, Albert, Minnie, and Lula." He saw the children. Their mother said these three were under age. She is dead. W. E. Liverman says that Swain reported to him that one of the children was "under age," and that he would execute another deed when he "came of age"; that he afterwards went to South Carolina, and "they" told him that they were all of age except one, and that he "would give me deed after he became 21 years of age." It appears that A. A. Simmons executed to Charles R. Johnson a contract to convey his undivided one-seventh interest in the land, and that Johnson, on October 9, 1909, executed to complainant a deed for this interest.

[3] On August 12, 1902, A. A. Simmons, pursuant to the terms of his contract, executed a deed to said C. R. Johnson. If, at the date of the deed to W. E. Liverman, November 23, 1899, A. A. Simmons

was a minor, his deed to Johnson August 12, 1902, being within 3 years thereafter, was a disaffirmance of his first deed and avoided same. The execution of a deed by an infant may be avoided or disaffirmed by the execution of another deed for the same land, within 3 years after reaching 21 years of age. Weeks v. Wilkins, 134 N. C. 516, 47 S. E. 24; Baggett v. Jackson, 160 N. C. 26, 76 S. E. 86. The contract was made with Johnson prior to the execution of the deed and within 3 years after the deed to Liverman.

The deed from Mamie B. Simmons to Richmond Cedar Works is dated January 23, 1905, more than 3 years after the date of her deed to Liverman. The evidence in regard to her nonage is unsatisfactory and inconclusive. There is no evidence of the date at which she reached full age, assuming her infancy at the date of her first deed. The burden of showing the disaffirmance of her deed within 3 years after reaching her majority is upon complainant. I am unable to find that she was an infant, or that, if so, she disaffirmed within 3 years. Her deed executed January 23, 1905, does not sustain either averment.

The extent of cutting and removing timber from the land by defendants Kramer Bros. & Co. was reserved to be ascertained by a reference.

A decree may be drawn that complainant is the owner of $^{15}/_{21}$, and defendant W. E. Liverman of $^{6}/_{21}$ of the land described in the bill, and that complainant is entitled to $^{15}/_{21}$ and defendant Kramer Brothers & Co. $^{6}/_{21}$ of the timber standing thereon February 10, 1910, and that said defendants are liable to account to the plaintiff for the value of the timber cut and removed therefrom since said date in excess of their interest therein; that a reference be made to some disinterested person, or persons, to be named by the court, to take such account and make report thereof; that partition of said land be made by commissioners to be appointed by the court, and the shares of the parties hereto allotted in severalty in accordance with this opinion; that this cause be retained for other and further orders and decrees.